[No. 8124.  Department One.  November 5, 1909.]

NELS CHRISTOPHER, *Respondent*, v. LOTTIE FERRIS *et al.*, *Appellants.*[1]

LIENS—ADVANCEMENTS—MISAPPROPRIATION OF FUNDS. Small advancements of money to defendant to be invested in real estate for plaintiff, do not impress a lien on specific real estate previously purchased by the defendants, by reason of plaintiff's use of the money to pay portions of a note secured by mortgage on the property, when the time elapsed and the small amounts preclude the idea that they were furnished to invest in any particular tract.

HUSBAND AND WIFE—SEPARATE PROPERTY OF WIFE—MORTGAGE BY HUSBAND. Where land was deeded by the husband to the wife, either before or after marriage, it is her separate property, and not subject to mortgage by the husband alone.

VENDOR AND PURCHASER—MORTGAGED PROPERTY—BONA FIDE PURCHASER—PRIORITIES. Purchasers of the separate property of the wife, with knowledge of a void mortgage thereon executed by the husband alone, are not liable for the mortgage, when there was no intent to pay the same; and the fact that they retained $200 of the purchase money to contest the mortgage, is not a recognition of the mortgage, but rather the contrary.

Appeal from a judgment of the superior court for King county, Griffin, J., entered January 11, 1909, upon findings in

[1]Reported in 104 Pac. 818.

favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for equitable relief. Reversed.

*O. E. Sauter* and *Judd & Olson*, for appellants.

*Byers & Byers*, for respondent.

MORRIS, J.—The respondent brought this action to subject certain real property to a lien arising out of three separate causes of action. In the first it was alleged that, during the year 1906, respondent and his brother advanced money to George W. Kuppler, which it was represented was to be invested in lands and title taken in the name of respondent's brother; but that Kuppler used the money in paying for the lot in controversy; that on May 15, 1907, the fraud being discovered, Kuppler gave the Christophers his note for $1,306, secured by a mortgage upon this lot. The title of the lot on May 15, 1907, was in the name of Harriette L. Cherry, having been obtained by her by deed from one Carlson, dated May 15, 1906, in which deed she is described as a spinster. On June 11, 1907, she transferred the title to appellants, and the purpose of this action was to declare a lien in respondent superior and prior to appellants' deed. The other causes of action are not involved in this appeal.

The history of the Kupplers, so far as it affects the title to this lot, is that on March 5, 1906, they were married at Vancouver, B. C. On May 15, 1906, the deed above referred to conveyed the lot in controversy to Harriette L. Cherry, describing her as a spinster. On May 26, 1906, George W. Kuppler conveyed the same lot to Harriette L. Cherry by quitclaim deed. On July 12, 1906, a second marriage ceremony was performed between them at Tacoma. There is some suggestion in the record that Harriette L. Cherry, at the time of the Vancouver, B. C. marriage, had been divorced less than six months, and we infer, neither of them testifying in the cause, that the second marriage was entered into under the impression that the first was invalid, and that there was

no legal relation between them until the Tacoma marriage, which may account for the fact that, in the two deeds of date prior to the last marriage ceremony, the grantee is named as Harriette L. Cherry. We cannot find any evidence that the money George W. Kuppler obtained from the Christophers was part of the purchase money of the lot in question. The deed conveying the title to Harriette L. Cherry is dated May 15, 1906, and recorded May 26, 1906. It recites a consideration of $4,000, and that the lot is subject to a mortgage of $1,000. The Christophers did not begin to furnish Kuppler money until July 24, 1906, and between that date and April 20, 1907, when he was given a check for $456, the remainder was furnished in sums of from $35 to $106. The time elapsing between these dates, and the small amounts paid, preclude the idea that they were furnished to invest in any one lot or parcel of land, and we know of no law or principle of equity under which a lien could be impressed upon this lot for the aggregate of the sums furnished.

The nearest the evidence comes to showing any connection with this lot and the money of the Christophers, is found in the testimony of respondent. He says: "He [Kuppler] told me that money of mine went on a note that they owed that was on the house, that he never got the money out of the bank, the bank held it, and that money went on a note that they owed that was against the house;" meaning, we take it, that Kuppler had borrowed money from some bank to make a payment on the property, and when the note became due they borrowed money from the Christophers to take it up. Assuming this to be the fact, we know of no lien thereby impressed upon the property. If Harriette L. Cherry was not the wife of George W. Kuppler on May 15, 1906, then the deed to her invested her with the title to the property. If she was the wife of George W. Kuppler by reason of the marriage at Vancouver, B. C., on March 5, 1906, then the quit-

claim deed from George W. Kuppler to her, dated May 26, 1906, invested her with his community interest, and she then became the owner in her separate right. So, whether she was or was not the wife of George W. Kuppler from and after May 26, 1906, the property was her separate property, and the deed from her to appellants invested them with full title.

It is urged that appellants purchased with full knowledge of the respondent's mortgage. That is true, but such knowledge could not add anything to the character of the lien represented by such mortgage. It is likewise true that respondent took his mortgage with knowledge of the title in appellants' grantor, so that the equities are equal. Inasmuch as George W. Kuppler had no interest in the property on May 26, 1906, his mortgage to the respondent on that day could not create any lien or incumbrance upon the property. It is next urged that the value of the property was $7,500; that appellants purchased for $6,200, and it must have been that the remaining $1,300 was intended to cover the mortgage of respondent. It is true that witnesses for respondent testify the property was worth $7,500, while appellants testify that full value was paid for the property, and we cannot find from the evidence that appellants made their purchase with any intention of paying respondent's mortgage.

Neither does the fact that appellants retained $200 for the purpose of contesting respondent's mortgage prove that they thereby subjected themselves to its lien. Such fact rather would prove that they did not recognize the lien of the mortgage. But inasmuch as it had been given by George W. Kuppler, it was incumbent upon the Kupplers to pay the cost of removing it as a cloud upon the title, or defending any action that might be brought for its foreclosure.

We are therefore of the opinion that the court below was in error in entering its decree adjudging the sum of $1,306, with interest and attorney's fee, to be a specific lien upon the lot in controversy, and decreeing a foreclosure and sale, and

to that extent the judgment appealed from is reversed, and the cause remanded with instructions to enter a decree in accordance with the views herein expressed.

RUDKIN, C. J., CHADWICK, and GOSE, JJ., concur.

FULLERTON, J., concurs in the result.