[L. A. No. 7633. In Bank.—November 10, 1926.]

## FONTANA LAND COMPANY (a Corporation), Appellant, v. GAIL LAUGHLIN, Respondent.

[1] STATUTE OF LIMITATIONS—NATURE OF—POWER OF COURT.—The power to nullify acts of the legislature prescribing the limitation upon the time within which actions may be commenced is not a judicial prerogative. Statutes of limitation have become rules of property, and are vital to the welfare of society and are favored by the law; they are viewed as statutes of repose, and as such constitute meritorious defenses.

[2] ID.—PROBATE COURT—BARRED CLAIMS.—It is a duty of probate courts to guard the interests of heirs and creditors of deceased persons, and so zealous is the law of their interests that it specially enjoins upon administrators and courts to reject and disallow outlawed claims.

[3] ID.—WAIVER OF STATUTE—PRIVATE PARTIES—EXECUTORS AND ADMINISTRATORS.—As between parties acting in their own right, the plea of the statute of limitations is unquestionably a personal privilege which may be waived; but an executor or an administrator, acting for others, and in a trust capacity, is not vested with this privilege, and may not waive such a defense.

[4] ID.—SALE OF PROPERTY OF ESTATE—BARRED MORTGAGE—POWER OF ADMINISTRATOR.—The administrator of the estate of a deceased person has no right to allow a reduction in the sale price of real property of the estate on account of an outlawed note of the decedent secured by a mortgage upon the property, for which no claim was presented or allowed against the estate, nor has the probate court the right to confirm such a sale.

[5] ID.—ACTION TO QUIET TITLE—BARRED MORTGAGE—VOID INTERLOCUTORY DECREE.—In an action to quiet title to real property in which the defendant sets up a barred promissory note secured by mortgage on real property executed by a person since deceased, an interlocutory decree requiring as a condition of quieting of plaintiff's title that the outlawed debt, together with interest

---

1. See 16 Cal. Jur. 394; 17 R. C. L. 668.

2. See 11 Cal. Jur. 749.

3. Waiver of statute of limitations by personal representative, note, L. R. A. 1915B, 1022. See, also, 11 Cal. Jur. 1150; 17 R. C. L. 883.

4. See 11 Cal. Jur. 954.

thereon, be first paid, is void, as the court is without authority to recognize the outlawed claim against the decedent.

[6] ID.—OUTLAWED MORTGAGE—WAIVER OF STATUTE.—The rule in this state is that where a privity of relation exists a mortgagor cannot quiet title to mortgaged property without paying his debt, but this rule cannot be applied to one who acquired the mortgaged land by purchase for a consideration after the lapse of the time within which an action to foreclose a mortgage could have been brought and at a time when the records showed the mortgage had become extinguished.

[7] ID.—DEATH OF MORTGAGOR—SEVERANCE OF PRIVITY OF PARTIES.— By the death of a mortgagor all privity that theretofore existed between the original parties to the mortgage or their assigns is severed.

[8] ID.—RENEWAL OF DEBT—MORTGAGE NOT REVIVED.—The subsequent renewal of a barred note may create a debt anew, but it does not renew, revive nor continue the mortgage.

[9] ID.—PROBATE SALE—SALE SUBJECT TO OUTLAWED MORTGAGE.— Where a bid upon the sale of property in a probate proceeding provided that it was made subject to a certain mortgage upon the property which was barred by the statute of limitations, which condition was also carried into the deed conveying all interest of the estate in the property to the purchaser, neither the bid nor the deed showed an unqualified admission or assumption of the debt which the bidder expressed an intention to acknowledge or assume, and the purchaser took the property freed from the outlawed mortgage.

[10] ID.—OUTLAWED MORTGAGE—ASSUMPTION.—Unless the grantee in a deed assumes or agrees to pay a mortgage, or unless the amount of the mortgage is deducted from the purchase price, a purchaser who merely takes subject to the mortgage is not estopped from showing that it has been paid or that the amount claimed is not legally owing upon it.

---

(1) 12 C. J., p. 883, n. 98; 22 C. J., p. 179, n. 46 New; 37 C. J., p. 684, n. 11, p. 689, n. 85, p. 690, n. 86, 87, p. 691, n. 92.   (2) 24 C. J., p. 296, n. 6.   (3) 24 C. J., p. 297, n. 16; 37 C. J., p. 721, n. 16.   (4) 23 C. J., p. 1170, n. 16, 17, 18; 24 C. J., p. 641, n. 38 New, p. 653, n. 40.   (5) 27 C. J., p. 218, n. 42 New; 32 Cyc., p. 1383, n. 14.   (6) 32 Cyc., p. 1383, n. 14.   (7) 24 C. J., p. 299, n. 44. (8) 37 C. J., p. 1142, n. 51 New.   (9) 24 C. J., p. 297, n. 16, p. 299, n. 44, p. 686, n. 73 New; 37 C. J., p. 1108, n. 59, p. 1110, n. 72, p. 1129, n. 11.   (10) 41 C. J., p. 757, n. 2.

6.   See 17 Cal. Jur. 1006.
8.   See 18 Cal. Jur. 426.
10.   See 18 Cal. Jur. 38.

APPEAL from a judgment of the Superior Court of San Bernardino County.  J. W. Curtis, Judge.  Reversed.

The facts are stated in the opinion of the court.

Leonard, Surr & Hellyer and D. A. Rothrock for Appellant.

Gail Laughlin, *in pro per.*, Helen Kaufman, Caroline Kellogg and J. E. Pemberton for Respondent.

SEAWELL, J.—On March 8, 1892, Frederick Wittram, being the owner of certain lands described in the complaint, executed a mortgage thereon to Mary S. Sperry to secure the payment of his promissory note of even date, whereby he promised to pay to the said Mary S. Sperry, one year after the date thereof, the sum of $4,000, with interest payable quarterly in advance at the rate of eight per cent per annum.  No part of the principal has at any time been paid, nor has any sum been paid on account of interest except the first quarterly installment, to wit, $80. The period prescribed by the provisions of section 337, Code of Civil Procedure, within which an action founded upon a written instrument may be maintained, expired on March 8, 1897.  No attempt was made by the maker or holder of the note, or her assignee, to renew, or revive it, or to extend the time of payment, or to reduce her cause of action to a judgment until many years after the action had become barred by the statute of limitations.  Frederick Wittram, the maker of said promissory note, died intestate June 3, 1910, leaving surviving him five adult children. Viola Berryman, a daughter, qualified as administratrix of his estate, but soon thereafter resigned and was succeeded by Frederick Wittram, a son of decedent, who was appointed administrator November 18, 1910.

No claim founded upon the mortgage or the promissory note, or at all, was ever presented in the probate proceedings as a claim against the estate of Frederick Wittram, deceased, or was ever filed, or presented to, or allowed by the administrator or the court in the administration of said estate.  The decree of final distribution was made and given by the superior court of the county of Alameda on July

15, 1913. Viola Berryman, during her term as administratrix, on July 5, 1910, commenced an action on behalf of said estate against the said Mary S. Sperry, alleging that said Mary S. Sperry claimed some right or interest in, or title to, or lien upon said real property, and prayed for a decree quieting plaintiff's title thereto as the administratrix of said estate. The defendant answered on August 8, 1910, admitted the death of Frederick Wittram, set out the mortgage and note above mentioned, alleged nonpayment except as to the first quarterly payment of interest, and further alleged, upon information and belief, that the mortgage at all times since its execution constituted and continued to constitute a good and valid lien in favor of the defendant upon said real property. Defendant concluded her answer by praying that plaintiff take nothing by the action unless the estate pay to defendant the amount remaining due and unpaid upon said note and mortgage, which were barred by the statute of limitations more than thirteen years prior to the day the answer was filed. The trial court, by its interlocutory decree in this proceeding, recited the facts as to the execution of the note and mortgage by Frederick Wittram on March 8, 1892, as heretofore set forth, and nonpayment, except as to said first quarterly payment of interest, and decreed that plaintiff, by reason of said nonpayment, was not entitled to a decree quieting title to said real property except upon the payment of the amount which it found to be due upon said mortgage, to wit, the principal sum of $4,000, with interest thereon at the rate of eight per cent per annum computed from March 8, 1892, to June 11, 1911, a period of nineteen years and three months, and amounting to approximately $6,100, including the payment of all future sums of interest that might thereafter accrue upon said principal sum at the rate of eight per cent per annum. The decree further provided that if the plaintiff should not pay said principal sum and interest found to be due upon said mortgage within sixty days after the service of a copy of the decree upon her, then a final judgment should be entered dismissing the action. The interlocutory decree further provided that if within sixty days from the date of service of a copy of the interlocutory decree upon plaintiff, there should be filed with the clerk of the court a satisfaction of the mortgage, then a final decree would be entered

quieting plaintiff's title to said real property. The administratrix of the estate and her successor having failed to comply with the terms of said interlocutory decree, the court, on March 1, 1913, almost two years after the entry of said interlocutory order or decree, made its final order, upon motion of the attorneys for the defendant, dismissing said action. No further proceedings were taken in the case.

In the course of the administration of said estate, the administrator, Frederick Wittram, Jr., in April, 1912, petitioned the probate court for an order of sale of the real estate of said estate, or so much thereof as the administrator might deem best, either at public or private sale. The petition recited the history of the administration and set forth in detail the existing indebtedness as furnishing the necessity for the sale. In describing certain mortgage indebtedness no mention was made of the Sperry note and mortgage, nor was it listed as an estate debt, although the real property upon which the lien is claimed to exist was described as a part of the realty to be sold. The real property was estimated to be of the value of $58,940. Pursuant to the petition, the court made its order on April 5, 1912, directing the sale of said real property on terms, one-half to be paid in cash at the time of sale and one-half to be evidenced by the promissory note of the purchaser secured by a mortgage upon the property sold, the time of payment not to exceed one year. The published notice of the administrator's sale was in the language of the notice of sale prepared by the administrator. The property was noticed to be sold at private sale on June 14, 1912, and on that day, pursuant to notice and the court's order, "all of the right, title and interest of the estate of Frederick Wittram, deceased, in and to" the real estate described in the notice was sold to Joseph R. Loftus, who was acting as the agent of plaintiff, Fontana Land Company, and was the only bidder. His bid was $86,-100 and incorporated in full the printed notice of the administrator's sale of real estate and adopted the terms of payment prescribed by said notice, and provided further that any forty acres mortgaged for the purchase price might be released from the mortgage at any time during the one-year period of liquidation upon the payment of $50 for each acre released. The bid also required the furnishing of a certificate of title by the estate "made by the Consolidated Abstract

and Title Guaranty Company of San Bernardino, to become the property of the purchaser in the event of the sale being completed.'' The language which the defendant places much emphasis on and claims to be equivalent to an express assumption of the mortgage indebtedness immediately follows the clause above quoted, and is in these words: ''And it being further understood that this bid is made subject to the mortgage of Frederick Wittram to Mary S. Sperry for the sum of Four Thousand ($4,000.00) Dollars and interest, dated the 8th day of March, 1892.'' The usual ten per cent deposit, $8,610, accompanied the bid, which provided for the forfeiture of the deposit in case of failure on the part of the purchaser to comply with the terms of sale and, on the other hand, provided that said deposit should be applied on account of the purchase price in the event that the bidder complied with the terms of said sale.

On July 25, 1912, upon the return of the sale and after proof of due notice, the probate court made its order confirming said sale, which was made in accordance with the terms prescribed by its order to Loftus for the sum of $86,-100. The court found that the sale was legally made and fairly conducted and the bid was not disproportionate to the value of the property sold; that a sum exceeding said bid by at least ten per cent, exclusive of the expense of a new sale, could not be obtained; that said real estate had been appraised within one year of the time of said sale; that the sum of $86,100 was more than ninety per cent of the appraised value of said real estate, and the sale was conducted as by the statute provided in such cases. Upon the confirmation of the sale legal conveyances were directed to be made to said Joseph R. Loftus. Accordingly a deed was executed by the administrator to the purchaser at the probate sale. By specific reference the ''order of sale'' was made a part of the deed. The mortgage terms of the one-half unpaid purchase price were complied with and the interest disposed of by the administrator's deed was ''all the right, title, interest and estate of Frederick Wittram, deceased, at the time of his death, and also all the right, title and interest that the said estate by operation of law or otherwise may have acquired other than or in addition to that of said intestate at the time of his death.'' The *habendum* clause contained the same language that was inserted in the bid, to wit, ''subject

to the mortgage of Frederick Wittram to Mary S. Sperry for the sum of Four Thousand ($4,000.00) Dollars and interest, dated March 8, 1892.'' On October 21, 1915, the plaintiff, as the legal owner of the fee and title to said real property, commenced an action against Mary S. Sperry and certain fictitious parties, alleging absolute ownership in itself and praying that its title be quieted against defendants and all other claimants. Subsequent to the filing of the complaint Mary S. Sperry, in 1916, sold and assigned said note and mortgage to Mary A. Sperry. The latter died testate in 1919, and by her will devised her entire estate to Gail Laughlin. The decree of distribution distributed to Gail Laughlin the ''mortgage on said land situate in San Bernardino County,'' which, from the description that follows, shows it to be the property described in the complaint herein. Gail Laughlin, having been substituted for Mary S. Sperry, filed an amended answer and admitted that plaintiff was the owner of the real estate described in the complaint, subject, however, to the lien of defendant arising out of the mortgage dated March 8, 1892, the effect of which is set out in the answer, together with a partial history of the probate proceedings and transactions. The interlocutory decree was pleaded at length and a portion of the final order or decree of dismissal was also pleaded, and the allegations that no appeal was taken from either of said decrees appear in said amended answer. It concludes with a prayer that plaintiff take nothing by the action and that defendant have judgment for the foreclosure of said mortgage dated March 8, 1892, and for a sale of the land described in the complaint, and that out of the proceeds of said sale there be paid to defendant the sum of $4,000 with interest at the rate of eight per cent per annum from March 8, 1892, until date of judgment, and interest at the rate of seven per cent per annum on each installment of interest called for in said note from the time payment became due; for attorney's fees at the rate of three per cent upon the amount found due as provided in the mortgage, and for costs of the action. Plaintiff demurred to the answer on the ground that it did not state a defense for the reason that the cause of action grounded upon the note and mortgage was barred by section 337, subdivision 1, of the Code of Civil Procedure. Defendant, in addition to answering, filed a cross-complaint, alleging the execution of

said note and mortgage, nonpayment thereof, the former action to quiet title, the interlocutory decree and the decree or order of dismissal made thereon, and concluded with a prayer for the foreclosure of said mortgage in terms and substance similar to the affirmative relief sought by the amended answer. Plaintiff in its answer to the cross-complaint, and as a bar to the affirmative relief sought, pleaded sections 319, 337, subdivision 1, 339, 343, 1499 and 1500 of the Code of Civil Procedure. It is specifically alleged therein that no claim founded on said promissory note or mortgage was ever presented to the executor or to said estate or filed or allowed in the administration of the estate and that final distribution had been made several years prior to the filing of the answer and cross-complaint; plaintiff also alleged a want of knowledge that said bid contained the clause subject to any mortgage; the expenditure of $25,000 in making improvements without protest or claim being made by defendant's predecessors that they claimed any right to or interest in said real property, and without claim by them or either of them as to any ownership therein; that plaintiff and its predecessor held and occupied said lands for a long period of years without the assertion upon the part of defendant's predecessor of any interest, title to or lien upon said land; that the price paid was the full, fair market value of said land and no reduction was made, contemplated or intended to be made by the purchaser by reason of the mortgage given in 1892; that there was no intention on the part of the plaintiff or its predecessors to acknowledge said barred mortgage and note, or either, as constituting a claim or lien upon said lands, and no intention at any time to revive or renew said mortgage or extend the time for the payment of said note; that the clause "subject to the mortgage," etc., in the bid and deed was inserted by the attorney for the estate only to relieve the fears and anxiety of the administrator as to any liability that might accrue against him by reason of any implied covenant against encumbrances arising out of the transaction, and it was so understood by the administrator and the purchaser at said probate sale, and the clause was not intended to constitute an assumption by the purchaser of any mortgage debt whatsoever; that plaintiff and its predecessors and said administrator were informed, believed and understood that said mortgage lien had long since become

barred by the statute of limitations and was wholly ineffective for any purpose.

The court found generally that all of the allegations of defendant's amended answer and cross-complaint, respectively, were true. It then found specifically that plaintiff was the owner of the fee and legal title to all the land described in the complaint; that defendant's claim to a lien on said lands was just and valid; that defendant's cause of action as set forth in her cross-complaint was not and is not barred by any provision of any section of the Code of Civil Procedure; that no claim founded on the promissory note set forth in the cross-complaint was ever presented in the probate proceedings as a claim against the estate of Frederick Wittram, deceased, which was finally closed in 1913; and that Loftus was the agent of plaintiff and the latter was bound by his acts. Paragraph VI of the findings, from which the deduction is made that the bid of Loftus influenced others *not to bid,* is as follows: "That Loftus, as the agent of plaintiff, and the said plaintiff, received and had the advantage of an equivalent to a deduction from the purchase price to the extent of the sum unpaid on the debt secured by said mortgage, consisting of having the bid of said Loftus treated and accepted as the highest and best bid, when other persons were ready and willing to bid and pay a much larger sum for the land, on condition that they should not be required to bid on it as subject to the mortgage, or to accept a deed making the land subject to the said mortgage."

The court also found that the defendant and cross-complainant had not been guilty of laches so as to bar her from prosecuting the action presented by the cross-complaint and was not estopped from claiming her lien on the land. The allegation as to the intention of the purchaser by the insertion of the "subject to mortgage" clause in said bid and deed was found against plaintiff. The sum of $500 was found to be a reasonable attorney's fee and was allowed.

The conclusions of the court were that the plaintiff was entitled to a decree quieting its title to the lands described in the complaint only upon condition that it make payment to the defendant of such sum of money as should be found sufficient to discharge defendant's lien upon said lands, which at the time judgment was entered was decreed to be $4,000 principal, together with interest from 1892 at the rate of

eight per cent per annum, computed at $20,051.83, and $500 attorney's fees and costs of action; that if such payments were made at the time thereafter fixed by the interlocutory decree (ninety days from and after receipt of notice of the entry of the interlocutory decree) plaintiff should have a final decree quieting its title to said lands, and if plaintiff should fail to make payment as set forth in said interlocutory decree, the defendant and cross-complainant, upon application to the court, would be entitled to and have a final judgment and decree for foreclosure of her lien on said lands and would be entitled to an order for the sale of said lands in satisfaction of said lien and judgment. The interlocutory judgment incorporated, substantially, the matters set out in the conclusions of law. The appeal is taken from the judgment and decree as related.

Counsel have devoted many pages in argument and have cited authorities extensively as to the effect of the language of the bid, which was also carried into the *habendum* clause of the deed, and which was as follows, to wit: " . . . and it being further understood that this bid is made subject to the mortgage of Frederick Wittram to Mary S. Sperry, for the sum of $4,000 and interest, dated the 8th day of March, 1892." This language, however, was no part of the notice of sale nor the court's order and was introduced into the transaction by the attorney for the estate, who prepared the bid. The only parol evidence admitted by the court as to whether the purchaser made any reduction from the purchase price on account of the outlawed mortgage was that no such reduction was made, considered or discussed by the purchaser with the attorney of the estate or the defendant or any of her predecessors in interest, or with any other person, and that the purchaser regarded the mortgage as long since barred by the statute of limitations and of no legal effect whatsoever. The administrator and attorney for the estate were active in interesting other persons to bid, but no other bid could be obtained. A form of bid prepared by the attorney for the estate on behalf of W. D. Frederick, which was not offered nor presented to the administrator, and in which the purchase price was set at $91,000, was allowed in evidence against the objection of appellant.

In addition to the objection that it was not offered as a bid by the prospective purchaser, it did not conform to the

terms of sale, inasmuch as it provided for a period of three years in which payment might be made of the unpaid one-half purchase price instead of one year as provided by the notice and order of sale, and was conditioned that if payment should be made within one year after date the rate of interest was to be five per cent instead of six per cent as provided by the Loftus bid. The proposed bid had no evidentiary value as to the market value of the land and was at best but secondary evidence. Besides, the probate court, whose duty it was to protect the interests of the estate, found, by elaborate recitals, that the Loftus bid was full, fair and adequate and represented the market value of the property sold and the sale was fairly conducted. The bid was more than ten per cent above the appraised value and was $27,160 above the estimated value made some time prior to the sale.

The probate court found that a sum exceeding said bid by at least ten per cent, exclusive of the expenses of a new sale, could not be obtained. A letter written by Frederick a short time after he forwarded the form bid to the attorney was received in evidence over plaintiff's objection. In this letter he stated that it was not his intention to make a bid in the form prepared by the estate's attorney, which contained the "subject to the mortgage" clause. The cloud on the title was mentioned, but the legal enforceability of the lien was not admitted. The opportunity left open to bring suits on the claims was adverted to. The attorney for the estate was permitted to testify, against objection, that there were several persons who *said* they would go above the Loftus bid if the title could be cleared. It will be remembered that all the administrator purported to sell was the right, title and interest of the estate. A letter from J. H. Adams & Company to the estate's attorney was received in evidence in which the firm referred to the mortgage of 1892 and stated that it would be impossible for it to handle the land, as it intended to subdivide it and it was necessary for its purposes to give a *perfect* title. The letter further stated, unquestionably in reply to suggestions made in the course of negotiations as to the bar of the statute, that "even though the collection of the mortgage be barred by the statute of limitations, it nevertheless remains an incumbrance upon the property of such character as would prevent its sale to subdivision purchasers." The purchaser in the instant case was in nowise

responsible for the condition of the title and he could not, as a matter of fact or law, have been placed in a better position by reason of the barred mortgage than any other prospective purchaser was placed. It is not quite understandable how the Loftus bid, as suggested in paragraph VI of the findings, could have had a retroactive effect or influence upon other prospective bidders. At any rate his act could not have made the law of the case as to others. Any purchaser as a matter of law was bound to take the title as it then existed. The logic of the situation is itself sufficiently persuasive of the fact that no person in a normal frame of mind would have intentionally and deliberately assumed a mortgage indebtedness aggregating $24,051.83 in excess of the valuation of the property as fixed by the probate court, which valuation was not contradicted by any legal evidence in the case, and this, too, in the face of the record showing said indebtedness to have been barred by the lapse of more than fourteen years before the sale and eighteen years before the filing of the cross-complaint herein.

[1] The power to nullify acts of the legislature prescribing a limitation upon the time within which actions may be commenced is not a judicial prerogative. Statutes of limitation have become rules of property. They are vital to the welfare of society and are favored by the law. (*Nicholas* v. *Randall*, 136 Cal. 426 [69 Pac. 26]; *Shain* v. *Sresovich*, 104 Cal. 402 [38 Pac. 51].) They are to be viewed as statutes of repose, and as such constitute meritorious defenses. (*Lilly-Brackett Co.* v. *Sonnemann*, 157 Cal. 192 [21 Ann. Cas. 1279, 106 Pac. 715].)

The title to the real property in the instant case immediately upon the death of Frederick Wittram, Sr., vested in his heirs at law. [2] It is the duty of probate courts to guard the interests of heirs and creditors. So zealous is the law of their interests that it specially enjoins upon administrators and courts the duty to reject and disallow outlawed claims. Section 1499, Code of Civil Procedure, provides: "No claim must be allowed by the executor or administrator, or by a judge of the superior court, which is barred by the statute of limitations. . . ."

[3] In *Reay* v. *Heazelton*, 128 Cal. 335, 338 [60 Pac. 977, 978], the above-cited section was construed by this court, and it was there said: "As between parties acting in their own

right, the plea of the statute of limitations is unquestionably a personal privilege which may be waived. But an executor or administrator, acting for others, and in a trust capacity, is not vested with this privilege, and may not waive such a defense. By section 1499 of the Code of Civil Procedure the personal representative, as well as the judge of the superior court, is forbidden to allow any claim which is barred by the statute of limitation. It would be a most unwarranted evasion of this mandatory provision to permit an executor or administrator by his failure to invoke the plea to suffer judgment upon a claim which, when presented to him, he was bound by law to reject because of the bar of the statute. In *Vrooman* v. *Li Po Tai,* 113 Cal. 302 [45 Pac. 470], it was held that the administrator, by appearing and answering, could not waive the objection that the claim in suit was barred by the statute; and in *Boyce* v. *Fisk,* 110 Cal. 107 [42 Pac. 473], it is declared that an administrator will not be permitted to waive the statute of limitations upon a claim which is barred. To like effect is *Butler* v. *Johnson,* 111 N. Y. 212 [18 N. E. 643].

"The same principles must apply here, and however tardily the plea may have been presented, since the facts appear of record and are now called to this court's attention, it must be held that plaintiff's right of action upon the judgment is barred by the statute of limitations." (See, also, *Etchas* v. *Orena,* 127 Cal. 588 [60 Pac. 45]; *Barclay* v. *Blackington,* 127 Cal. 189 [59 Pac. 834].)

[4] Neither the administratrix nor the administrator were acting in their own right, but as trustees of the estate for the benefit of the creditors and heirs, and to have allowed or permitted a reduction of the sale price of lands belonging to the estate would be, as was said in effect in *Vrooman* v. *Li Po Tai,* 113 Cal. 302 [45 Pac. 470], to pay a barred claim out of moneys belonging to creditors who had been vigilant in pursuing their remedies and also to take from the heirs property which had vested in them. The personal privilege of waiving the statute of limitations expired with the decedent and was not transmitted to the administrator or any other person to be exercised for the benefit of barred claimants to the prejudice of creditors. It was the duty of the administrator to remove from the title any cloud that tended to reduce the market value of the real property. As a matter

of fact it would have been the duty of the court to have refused confirmation of the sale and to have ordered appropriate proceedings taken if in its judgment untenable asserted claims were pressing down the sale price to an appreciable extent. The refusal to allow barred claims is more than a general policy of the law; it is the positive command of the statute. The mortgage indebtedness showed upon its face and it was apparent upon the public records of the county of San Bernardino that it was barred long prior to the first assignment made in 1916 by Mary S. Sperry to Mary A. Sperry. If the statute was effective for any purpose it would seem to furnish an answer to the resistance made by the defendants in the first action brought by the administrator to quiet title. [5] The first purported interlocutory decree shows upon its face that it was void. The court was without authority or jurisdiction to make it, inasmuch as it compelled the recognition of a claim proscribed by statute. If respondent's contention be accepted as the true rule, barred claims not presented for allowance or rejection could be used to defeat the closing of estates and real property belonging thereto would become inalienable. This would be indulging mere subterfuges to defeat the plain letter of the statute. It would also place the creditors of an estate who had been vigilant on no better terms than those who had been guilty of gross laches, and if barred claims are to be paid prior to or as a condition to the right of the administrator to sell real property, persons chargeable with negligence would be in a position to defeat the just claims of the vigilant. The interlocutory decree or order made in the second action commenced to quiet title in 1915 goes even beyond the first in its exaction. It not only forbids alienation until a large sum of interest computed on the barred principal is paid, but it also revives and restores a lien without any attempt being made on the part of the lien claimant to comply with the law in bringing to life a dead lien. "A mortgage can be created, renewed, or extended *only* by writing executed with the formalities required in the case of a grant of real property." (Italics supplied. Civil Code, section 2922.) The lien in this case was extinguished under the provisions of section 2911, Civil Code, at the time the principal obligation expired, and, therefore, no action to foreclose it could be maintained on the cross-complaint. (*Cali-*

*fornia Savings Bank* v. *Parrish,* 116 Cal. 254 [48 Pac. 73].)
There can be no pretense that the cross-complainant or her
testate held at any time a subsisting, enforceable obligation.
There was no renewal or extension of the lien, and it was
extinguished long before any attempt was made to assign it
or enforce it.  It therefore could not form the basis of a fore-
closure action.

[6]   The rule in this state is that where a privity of re-
lation exists the mortgagor cannot quiet title without paying
his debt.  But this rule cannot be applied to one who ac-
quired the mortgaged land by purchase for a consideration
after the lapse of time within which an action to foreclose the
mortgage could have been brought and at a time when the
records, as in this case, showed the mortgage had become
extinguished.   (*Faxon* v. *All Persons,* 166 Cal. 707 [L. R. A.
1916B, 1209, 137 Pac. 919].)   The instant case presents a
situation far less favorable to respondent than the ordinary
relation of mortgagor and mortgagee, or the assigns of either.

[7]   Here the law intervened and absolutely severed all
privity that may have theretofore existed between the original
parties or their assigns.   The transaction has passed through
the purging processes of the probate court, which by statutory
mandate guards the interests of creditors who have not
allowed their claims to become stale.   [8]   The subsequent
*renewal* of a barred note may create a debt anew, but *it* does
not *renew, revive* nor continue the mortgage.   (*Sanford* v.
*Bergin,* 156 Cal. 43 [103 Pac. 333] ; *Wells* v. *Harter,* 56 Cal.
342; *Southern Pacific Co.* v. *Prosser,* 122 Cal. 413 [52 Pac.
836, 55 Pac. 145].)   Hence the court in the instant case was
powerless to revive the lien.   [9]   Neither do we think the
language contained in the bid or deed amounts to an un-
qualified admission or assumption of an existing debt which
the bidder expressed an intention to acknowledge or assume.
This conclusion seems quite irresistible when all the facts and
circumstances surrounding, leading up to and constituting
material parts of the transaction before us are considered
together.   " 'If there be *accompanying* circumstances which
*repel* the promise or intention to pay; if the expressions be
equivocal, vague and indeterminate, leading to no certain
conclusion, but at best to probable inferences, which may
affect different minds in different ways, we think they ought
not to go to a jury as evidence of a new promise to revive the

cause of action.' (Mr. Justice Story in *Bell* v. *Morrison*, 1 Pet. [U. S.] 362 [7 L. Ed. 174].)'' (*Visher* v. *Wilbur*, 5 Cal. App. 562, [90 Pac. 1065], and cases therein cited.) The estate was not liable for the barred claim as it was neither creditor nor debtor in the matter. To whom, it may be pertinent to inquire, was the alleged promise to pay made? The acknowledgment of a debt in the contemplation of the statute must be a distinct, unqualified, unconditional recognition of an obligation for which the person making such admission is liable. (*Powell* v. *Petch*, 166 Cal. 329 [136 Pac. 55].) The administrator and his attorney surely were not acting as the agents of the holder of the barred claim against the interests of the estate. No one pretended to represent the barred lien claimant. Neither the administrator nor his attorney was competent as the representative of the estate to enter into a contract which would revive the statute of limitations in favor of anyone as to the barred debt. (Code Civ. Proc., sec. 1499; *Visher* v. *Wilbur, supra; Boyce* v. *Fisk*, 110 Cal. 107 [42 Pac. 473]; *Vrooman* v. *Turner*, 69 N. Y. 280 [25 Am. Rep. 195].)

[10] In their search for precedents to sustain the respective theories of counsel as to the construction to be placed upon the ''subject to the mortgage'' clause, cases from many jurisdictions are cited. The greater weight of authority and the better reasoning is that unless the grantee in the deed assumed or agreed to pay the mortgage, or unless the amount of the mortgage was deducted from the purchase price, a purchaser who merely takes subject to the mortgage is not estopped from showing that it has been paid or that the amount claimed is not legally owing upon it. This rule, which we believe to be sound, is elaborated in *Brunswick Realty Co.* v. *University Co.*, 43 Utah, 75 [134 Pac. 608]; *Crawford* v. *Nimmons*, 180 Ill. 143 [54 N. E. 209]; *Ault* v. *Blackman et al.*, 8 Wash. 624 [36 Pac. 694]; *Brooks* v. *Owens*, 112 Mo. 251 [19 S. W. 723, 20 S. W. 492]; *Thompson* v. *Morgan*, 6 Minn. (Gill) 199; *Christopher* v. *Ferris*, 55 Wash. 534 [104 Pac. 818]; *Hewitt* v. *Durant*, 78 Mich. 186 [44 N. W. 318]. Many other cases, including decisions of the courts of this state, and text-writers might be cited to the same effect.

In the instant case it must be kept in mind that we are dealing with the application of the statute of limitations to a probate sale and not with the general question as it

affects the privities that exist ordinarily between mortgagors and mortgagees. This is a distinction that cannot be set aside. But aside from this aspect of the case there is no evidence to sustain the conclusion that any reduction was intended to be made by the purchaser by reason of the outlawed note and mortgage.

The judgment and decree appealed from are reversed.

Richards, J., Finlayson, J., Shenk, J., and Waste, C. J., concurred.