[Civ. No. 469. First Appellate District.—July 12, 1909.]

C. TOGNI, Appellant, v. PIO TAMINELLI and TERESA TAMINELLI, His Wife, Respondents.

ACTION TO SET ASIDE DEED FOR FRAUD—JUDGMENT OF NONSUIT—REVIEW UPON APPEAL.—In an action to set aside a deed alleged to have been obtained by defendant by means of fraud and without consideration, where a judgment of nonsuit was granted, the appellate court will review the evidence to determine whether it is sufficient to support findings or a verdict for the plaintiff, and must consider the evidence for plaintiff as absolutely true, and resolve all reasonable inferences that may be drawn in favor of the plaintiff. *Held,* upon a review of the evidence, that the nonsuit of the plaintiff was improperly granted.

ID.—DEED FRAUDULENTLY INSERTED IN RELEASE—RELIANCE UPON DEFENDANT'S GOOD FAITH—NEGLECT TO READ INSTRUMENT.—Where the defendant prepared a release which he induced plaintiff to copy, and which plaintiff was authorized to execute, and when called to execute the same defendant had fraudulently inserted therein a deed from the plaintiff of valuable asphalt and oil lands to himself without consideration, and plaintiff, relying wholly upon defendant's statement that it was the release which he was executing, signed the instrument without further reading the same, the defendant cannot be protected in his fraud by such neglect of the plaintiff under the circumstances.

ID.—RULE IN EQUITY—EFFECT OF FALSE REPRESENTATION UPON NEGLIGENT PERSON.—It is a well-settled rule in equity that the effect of false representation is not to be got rid of on the ground that the person to whom it was made has been guilty of negligence.

APPEAL from a judgment of the Superior Court of Santa Clara County. M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

Will M. Beggs, C. H. Herrington, and A. H. Jarman, for Appellant.

W. P. Veuve, R. R. Syer, and H. D. Tuttle, for Respondents.

COOPER, P. J.—This action was brought for the purpose of having a certain deed made to defendant Pio Taminelli

to lands described in the complaint, situate in Santa Barbara county, set aside as being fraudulently obtained from plaintiff without consideration, and to have plaintiff's title restored; or, in case that cannot be done, for the recovery of $10,700, the amount which it is alleged said Pio Taminelli received by reason of the sale of such lands. At the close of plaintiff's testimony the court granted the motion of defendants for a nonsuit and judgment was accordingly entered. This appeal is from the judgment, and is accompanied by a bill of exceptions.

It becomes our duty to examine the evidence, and if it is sufficient to sustain findings, or a verdict for the plaintiff, in case the court or a jury had found for plaintiff, it is our duty, under well-settled rules, to reverse the judgment.

In determining such question we must consider all the evidence in the record as absolutely true. Not only this, but it is our duty to resolve all reasonable inferences that may be drawn in favor of the plaintiff.

The questions, therefore, for our consideration are as to whether or not the plaintiff was the owner of the land, whether the deed was obtained from him by fraud and without consideration, and whether the money received by Pio Taminelli for the land is in equity and good conscience the money of plaintiff.

The evidence, in brief, shows the following facts: Plaintiff first met defendant, Pio Taminelli (who will hereinafter be referred to as the defendant), about June, 1900. Defendant represented to plaintiff that he owned the tract of land described in the complaint, and that it was very valuable for asphaltum and perhaps oil. After some negotiations, and on June 11, 1900, the defendant, as party of the first part, entered into an agreement with plaintiff, F. E. Allyn and C. H. Herrington, as parties of the second part, by the terms of which agreement defendant was to convey the land to the parties of the second part for the consideration of certain payments, amounting to, in round figures, $6,000. The second payment, $1,400, was to be made within one year; $2,000 within two years, $1000 within three years, and the final payment was to be one thousand shares of the capital stock of a corporation which the parties of the second part contemplated organizing for the purpose of operating and exploring

the lands for oil and asphalt and other mineral substances. This contract gave the parties of the second part the right to the immediate possession of the said land, together with the tools, tracks, and cars then upon the same, and will be referred to herein as the Herrington contract. In May, 1901, the plaintiff sold to defendant an undivided one-half interest in a grocery store which plaintiff had been conducting in San Jose, and gave to defendant a bill of sale of such undivided one-half interest in such store. The consideration for the sale was $3,500, of which $1,500 was paid by defendant in cash, and the balance, $2,000, by a conveyance of an undivided one-half interest in the lands herein described. The plaintiff and defendant were thus partners in the grocery business from May 2 to June 17, 1901. On this last-named date the plaintiff sold to defendant his remaining one-half of the grocery store for $3,500, the consideration paid by defendant being $1,500 cash or its equivalent, and a conveyance by defendant of his remaining undivided half of the lands at the price of $2,000. The deed was delivered to plaintiff, and a bill of sale made by plaintiff to defendant of the store and merchandise. Defendant thus became the sole owner of the grocery store and appurtenances, and plaintiff became the sole owner of the lands. The deed was delivered to the plaintiff, and he placed it in the safe at the store, to which defendant had access. Plaintiff, at defendant's request, continued to conduct the store until about the 7th of July following the sale, at which time he went away on a vacation for about a month, and when he returned he was informed by defendant that he had overdrawn his account, and that defendant had taken the deed as security. Plaintiff made no objection at the time to the deed being held as security, although it does not appear that he consented that it should be so held. On December 11, 1901, defendant gave to plaintiff a statement of his account, showing a balance due of $50.04, but among the credits given to the plaintiff were two promissory notes given by plaintiff to defendant, one for $400 and the other for $273. This statement of account was receipted by defendant as a statement and settlement in full. Some time during the year 1902 the plaintiff turned over to defendant some accounts, and a half interest in a house and lot in east San Jose; but it does not appear clearly

what was the value of the accounts or of the half interest in the house and lot. Defendant never surrendered or delivered up the $400 note or the $273 note to plaintiff.

It seems that the contract or agreement made on June 11, 1900, by defendant to plaintiff, Allyn and Herrington had not been compiled with, or at least had been abandoned. Some time prior to August, 1902, defendant stated to plaintiff that Herrington and Allyn had not complied with their contract, and had failed to make the payments as therein provided, and showed to plaintiff a copy of a release of the Herrington contract, and asked plaintiff to make a copy of such release in his own handwriting, so that he could show such copy to Herrington and Allyn as evidence of the fact that plaintiff was willing to sign such release. Thereupon plaintiff made in his own handwriting a copy of the paper or release which defendant had given him, and which is as follows:

"Know all men by these presents that for and in consideration of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, that certain lease dated June 11, 1900, and recorded in book 71 of deeds, page 221, the 18th day of July, 1900, in the county records of Santa Barbara County, California, and executed by and between Pio Taminelli of the County of Santa Barbara, party of the first part therein, and C. Togni, C. H. Herrington and Frank E. Allyn, of the County of Santa Clara, State of California, the parties of the second part therein, is hereby canceled, annulled and made void, and is of no further effect whatever, and we do hereby sell, assign and transfer to said Pio Taminelli all our rights, title and interest in and to said above lease.

"In witness whereof we have signed our names.

"C. TOGNI."

Some time after this copy had been made by plaintiff the defendant asked plaintiff to come up and "sign the release." Plaintiff went up to Herrington's office, where were present Herrington, Allyn and defendant. Defendant said to plaintiff, "There is the release ready," and plaintiff, believing it to be a release, and the one of which he had made a copy, signed a paper, which contained the substance of the paper which had been previously copied by him, together with an additional clause at the end thereof as follows: "And the

said parties of the first part herein do, for a good and sufficient consideration, grant, bargain and sell unto the said party of the second part herein, all of their and each of their right, title and interest in and to all the property described and mentioned in the said agreement of June 11, 1900, it being the intent of this instrument to vest in the said party of the second part herein the same title in the premises in said indenture of June 11, 1900, described as said party of the second part herein had and held before the execution and delivery of said agreement of June 11, 1900.''

The above release and conveyance was duly acknowledged by plaintiff, Herrington and Allyn, and being delivered to defendant he placed it on record.

Plaintiff had never had any conversation with defendant about making a deed of the lands to defendant. He received no consideration for the execution of the instrument. He had heard nothing said except as to getting a release of the Herrington contract. Allyn testified that defendant referred to the paper as a ''release,'' and that they were all ready to release the Herrington contract. Herrington testified that defendant said to plaintiff when he came in, ''Here is the release,'' and that they all signed it; that plaintiff did not read it. There is not a word of evidence tending to show that defendant ever mentioned ''deed'' to plaintiff or to Herrington or to Allyn. Plaintiff was not in good health after he sold the grocery business, and had a stroke of apoplexy some time afterward. He appears to have placed implicit confidence in defendant, who had been his partner, and who told him that he was holding the deed as security for a small balance. After getting the deed signed by plaintiff and placing it of record, defendant sold the land for $60 an acre, as testified to by himself. Defendant also testified that he destroyed the deed that he had executed to plaintiff.

It clearly appears that after this deed was duly executed and acknowledged and delivered to plaintiff, defendant took possession of it without plaintiff's consent, claiming to hold it as security, and that he afterward destroyed it without plaintiff's consent or knowledge. Defendant thus, from this testimony, has the store and business valued at $7,000, which he paid for by a conveyance of the lands; and he also has the proceeds of the sale of the very same lands amounting to

more than $10,000, and plaintiff has nothing. Defendant executed and delivered a deed to plaintiff, and afterward, while a partner of plaintiff, took the deed from the safe into his own possession. The deed he not only destroyed, but to make assurance doubly sure he obtained a reconveyance by calling the paper a release. These matters all appear by the evidence, and the reasonable inferences to be drawn from such evidence. It may be that defendant can show the facts to be different; but the court should carefully look into and examine every fact and circumstance in order to arrive at the truth. If defendant paid any consideration for a reconveyance of the land, he will be allowed to show it. If he legally held the title to the land as security, the court can determine the amount of indebtedness due him by plaintiff. Surely the defendant should not be allowed to keep the proceeds of the sale of the lands if the above facts are true; and as before stated, we must here consider them true.

It is said that the plaintiff cannot complain because he was guilty of negligence in not reading the paper before he signed it. If such were the rule, it would indeed be a harsh one, and one that would work injustice upon many nonsuspecting persons. When the plaintiff had been asked to copy the release and had done so; when he had heard nothing else spoken of but a release, and was asked to sign the release with Allyn and Herrington, who were parties to the contract which was released, it is not surprising that he did not read it through to see if hidden within there was a deed of conveyance. He appears to have had confidence in defendant, and relied upon the statements made by defendant to him. It would hardly be presumed that defendant would call the paper a release in the presence of Allyn and Herrington unless he intended thereby to get it signed as a release.

The authorities fully sustain the proposition that relief will be granted under such circumstances.

In *Higgins* v. *Parsons,* 65 Cal. 280, [3 Pac. 881], the contract was that a certain note secured by mortgage should bear interest at the rate of ''one per cent per month,'' but by mistake the note was made to read ''one per cent per annum.'' The trial court held that the mistake could not be corrected in a court of equity on account of defendant's negligence in not reading the note. The supreme court held otherwise and

reversed the case, and in the opinion said: "The finding that plaintiff might have discovered the mistake which he seeks to have rectified is an immaterial one. The right to have an instrument revised so as to have it truly express the intention of the parties is not made to depend upon the fact whether the party seeking to have it so revised might have discovered the mistake before signing such instrument."

In *Calmon* v. *Sarraille*, 142 Cal. 639, [76 Pac. 488], it appeared that the agent of plaintiff, in negotiating for the purchase of certain lands for $11,500, falsely represented to plaintiff that the vendor of the land insisted upon a deed of a lot belonging to plaintiff, and presented a deed as a part of the consideration, representing that it was a deed to the party from whom plaintiff was purchasing, when in fact it was a deed to the agent, and the party selling to plaintiff had not heard of such deed, and only received the $11,500. Plaintiff, relying upon the representations of such agent, did not read the deed but signed it. The court gave relief, and in the opinion said: "The proposition of the appellant that inasmuch as the contents of the instrument were open to the plaintiff equally as to Garnier, and that as they signed it without reading it or having it read to them they are bound by its terms, is without merit. . . . Even when contracting parties are adverse to each other, either has the right to rely upon an express statement made by the other of an existing fact of which the truth is known to the other and not to him. (*Mead* v. *Bunn*, 32 N. Y. 275; *Bank of Woodland* v. *Hiatt*, 58 Cal. 234.)"

In *Resh* v. *First Nat. Bank*, 93 Pa. 397, where a suit was brought upon a promissory note, the defendant was allowed to prove that he signed the note believing it to be a receipt for moneys that had been paid to him, and that he relied upon a statement that it was a receipt for the money that he had so received. No suggestion was even made that defendant should have read the paper which was falsely represented to him to be a receipt.

In Pomeroy's Equity Jurisprudence, third edition, note d to section 896, the author quotes the language of Jessel, M. R., from *Redgrave* v. *Hurd*, L. R. 20 Ch. D. 1, as follows: "Nothing can be plainer, I take it, on the authorities in equity than that the effect of false representation is not got rid of on the

ground that the person to whom it was made has been guilty of negligence."

In our opinion the above-quoted authorities lay down the correct rule which should govern courts of equity in such matters. Nothing is more common than for a party who has agreed to give a deed or other contract relating to some specific subject, to sign it upon being told that it is the deed or contract which had been orally agreed to. The party who so signs has not exercised the greatest degree of care; but that will not excuse the party who intentionally misleads him. No one has a right, either in law or in morals, to complain because another has placed too great reliance upon the truth of what he himself has stated. In this case it comes with poor grace from defendant to say that plaintiff had no right to rely upon the statements made by himself to the effect that the instrument was a release.

It follows that the judgment should be reversed, and it is so ordered.

Kerrigan, J., and Hall, J., concurred.