[Civ. No. 12323. First Dist., Div. One. May 21, 1943.]

FRANK BONACCI, Respondent, v. MASSACHUSETTS BONDING AND INSURANCE COMPANY (a Corporation), Appellant.

H. W. Glensor and Hilary H. Crawford for Appellant.

Healey & Taylor for Respondent.

PETERS, P. J.—Defendant insurance company appeals from a judgment rendered in an action brought by plaintiff to compel payment of certain disability benefits alleged to be due under the terms of an insurance policy issued to plaintiff. The court determined that there was due to plaintiff $25 a month from August 2, 1937, to the date of the judgment, May 12, 1942. It held that the policy was in full force and effect and that there was due in past payments the sum of $1,450.

The policy here involved was issued in 1924. Admittedly, all premiums were paid up to the premium due in December, 1936. No premiums have been paid since that date. Under the terms of the policy defendant, among other things, agreed to insure plaintiff against "Disability resulting from illness which is contracted and begins during the life of this policy. . . ." For disability which prevented the insured from performing the duties of any business or occupation the company agreed to pay $100 per month for twelve months, plus an additional $200 if the insured was hospitalized; further, if the disability continued beyond the twelve-month-period, the company agreed to pay the insured $25 a month for as long as the disability continued. It was provided that such additional payments would be made while the insured was "under the regular treatment of a legally qualified physician or surgeon." The policy contained a clause that "Strict compliance on the part of the insured and beneficiary with all of the terms and conditions of the policy shall be a condition precedent to recovery," and another clause that if any disability continued beyond thirty days the insured had to furnish the company, every thirty days, if reasonably possible to do so, a written report of the insured's attending physician, fully stating the condition of the insured. The policy also provided that written notice of the injury or sickness upon which the claimed disability was predicated must be given the company within twenty days of the accident causing the injury or within ten days of the disability resulting from sickness. The company was given the right to make its own medical examination of the insured whenever reasonably required.

It is admitted that plaintiff became disabled within the meaning of the policy in June, 1936. At that time he was sixty-eight years of age and was working for a railroad com-

pany in Nevada as a section foreman, a position he had occupied for many years. He was sent to a hospital in Salt Lake City where his illness was diagnosed as an infected gall bladder and gall stones, and where he remained until the middle of July, 1936. He was then removed to a hospital in Los Angeles where he was operated upon for gall stones. He remained in that hospital for three months and then was sent to a rest home in Los Angeles. The first operation did not clear up the condition, and in February, 1937, he was again sent to a Los Angeles hospital where he was again operated upon and his gall bladder removed. After a month at the hospital he was sent back to the rest home, where he remained until July, 1937. During the period June, 1936, to July, 1937, pursuant to the requirements of the policy, plaintiff's attending physicians, every thirty days, filed the required medical reports with the company on forms furnished by the company. All these statements declared that plaintiff was disabled because of the gall bladder condition. No other disease was mentioned in the various reports.

In the period July of 1936 to June, 1937, the company paid to plaintiff eleven payments of $100 and the $200 hospital indemnity called for by the policy. The twelfth payment was due prior to July 2, 1937. Plaintiff testified that this payment was not paid when due, and that he telephoned Mr. Doyle, claims adjuster for defendant and the person who had signed all the prior checks, and with whom all negotiations relating to the policy had been carried on. Doyle had visited plaintiff at the hospital and rest home on several occasions during the year in question and was well acquainted with plaintiff's condition. Doyle requested plaintiff to call at the company's office in Los Angeles. Plaintiff called upon Doyle on July 2, 1937. Doyle told plaintiff that all that he had due under the policy was $100 for June, 1937, and that otherwise all rights under the policy were exhausted. He also stated that the company would make a gift of an extra $25 to plaintiff. The evidence shows that plaintiff is a foreigner and that he is unable to read or write English except to a very limited extent. He had never read his policy and did not know of the $25 a month provision. Doyle prepared, and had plaintiff sign, several documents which provided, generally, that for the $125 payment, plaintiff agreed to and did generally release the company from all obligations

under the policy. Doyle, in addition, prepared a draft for $125 which expressly provided that it was payable only when the policy was attached thereto. The policy was then at the home of plaintiff's daughter in Crockett, California. Plaintiff testified that Doyle suggested that he cash the draft at once, and that Doyle, in his presence, telephoned the bank immediately after the releases were executed and arranged to have the draft cashed without the necessity of producing the policy. Plaintiff cashed the draft in accordance with this arrangement. Although contradicted by Doyle, plaintiff testified that Doyle told him that he had to sign the documents prepared by Doyle to secure the last $100 payment, that the documents were merely receipts for this last payment, and that Doyle was throwing in the extra $25 as a gratuity.

Nothing more was done until November, 1938. In that month plaintiff discovered the policy in a trunk and it was read by plaintiff's daughter, with whom he was living, and others. They discovered the clause providing for the $25 payment during the total period of disability. In that month plaintiff and his daughter complained to the Insurance Commissioner that the $25 payments had never been made. The commissioner communicated with defendant, and by reply, dated November 17, 1938, defendant declared that all payments had been made, and that plaintiff had executed a complete release. A copy of this letter was sent by the commission to plaintiff's daughter and by her communicated to plaintiff. The complaint forming the basis of the present action was filed in September, 1940.

The complaint alleged that in 1936 plaintiff became totally and permanently disabled and that he has been disabled ever since. He also alleged due payment of all premiums and performance of all conditions on his part to be performed. Defendant denied that plaintiff paid any premiums after December 24, 1936, and that is now admitted. Defendant denied the performance of the policy conditions by plaintiff, denied he was disabled within the meaning of the policy, affirmatively alleged failure to comply with the condition requiring medical statements every thirty days after June of 1937, and as a special defense pleaded the releases of July 21, 1937. By way of cross-complaint defendant prayed that the policy be delivered to it for cancellation. Plaintiff, in his answer to the cross-complaint, in appropriate manner, pleaded

that the releases were secured by the fraud of defendant.

The case proceeded to trial in March, 1941. At that time plaintiff produced evidence that the releases had been secured by fraud, and also produced his attending physician Dr. Eldridge. The doctor testified he saw plaintiff after his first operation about July, 1936, but did not see him professionally again until September, 1937. He testified that plaintiff had no physical evidence of arthritis in July, 1936, but that when he saw him in September, 1937, he was totally incapacitated from that disease; that since September, 1937, he has constantly attended plaintiff; and that since that time he has been totally incapacitated from arthritis. He gave it as his opinion that the condition he found in September of 1937 was of long standing, and existed in 1936. At the conclusion of this first hearing the trial court held that plaintiff was not bound by the releases for the reason that they were procured by fraud, and ordered the case continued to enable the plaintiff to make proof that he was disabled by arthritis during the life of the policy. Further hearings were had in March and April, 1942. Plaintiff, at these hearings offered evidence of his doctor, his nurse and his sister to the effect that although he was disabled from the gall bladder condition in the last part of 1936, he was also disabled with arthritis during this period. Admittedly the various doctors' reports filed between July, 1936, and June, 1937, gave the gall bladder condition as the cause of disability and none mentioned arthritis as a contributing cause of disability. Dr. Eldridge testified that the arthritic condition that he first observed in September, 1937, was then fully developed, and that the arthritis was caused by the gall bladder infection.

On this evidence the trial court found that during 1936 plaintiff became disabled within the meaning of the policy by reason of the gall bladder infection and arthritis; that since that date he has remained disabled; that plaintiff had duly performed all the conditions required under the policy; that he had given to defendant all notices required by the policy; and that the releases were secured by fraud. On these findings the trial court adjudged that plaintiff was entitled to $25 a month from August 2, 1937, one month after the date of the releases, to the date of the judgment, and also determined that the policy was "in full force and effect."

■ Appellant urges that the finding of fraud is unsup-

ported by the evidence. But little consideration need be given to this contention. The evidence clearly supports the finding. The evidence shows that respondent was practically illiterate. His testimony was that Doyle told him that all he had coming under the policy was the last $100, and that the documents were receipts. These statements were false. Doyle admitted that on July 2, 1937, respondent was totally disabled within the meaning of the policy, and he admitted that respondent did not then tell him that the doctor had told him he could go back to work. Later he changed that story and testified that respondent had told him he was going back to work sometime in the future. Respondent denied so stating, and pointed out that at that time he had been retired by law and could not have resumed the only job he knew, working for the railroad. Nevertheless, Doyle, in drawing up the release, inserted a false statement for respondent to sign to the effect that he had "just been informed by my doctor that I am to be released by him for duty August 1, 1937." Respondent testified that at this time he was so crippled by arthritis he could not close his hands or raise his arms. He testified that Doyle represented that the documents were mere receipts and had to be signed to secure the money then due him, that at that time he did not know of the $25 disability clause in the policy, and that Doyle told him that he was only entitled to a balance of $100 under the policy. There was conflicting evidence on this issue offered by appellant, it is true, but these conflicts have been resolved by the trial court. Appellant's contention that respondent's evidence is inherently improbable deserves no consideration. A reading of the record demonstrates that respondent told a coherent credible story with far less contradictions and improbabilities than appeared in the testimony of Doyle. These conflicts were for the trial court. Its finding on the issue of fraud is clearly supported and cannot be disturbed.

Appellant next urges that, according to the terms of the releases, respondent was paid $25 not then due as consideration for their execution, and contends that, so long as respondent stands on fraud in procuring the releases, it was incumbent upon him to rescind the releases and restore or offer to restore the consideration received by him before he could lawfully maintain this action to avoid the releases. In this connection such cases as *Winstanley* v. *Ackerman*, 110

Cal.App. 641 [294 P. 449] and *Garcia* v. *California Truck Co.,* 183 Cal. 767 [192 P. 708], are cited. In those cases the plaintiffs received $1,250 and $350 respectively as consideration for the execution of releases. In both cases the plaintiffs knew they were signing releases, but were relying upon fraud to avoid them. In such circumstances an offer to restore the consideration received was properly held to be a condition precedent to maintaining the action. But that is not the situation here. In this case the fraud was not in securing the respondent's signature to a document the nature of which was known to him, but in misrepresenting the nature of the document. Plaintiff testified, and the trial court found, that he believed, because of appellant's fraud, that he was signing a mere receipt. There is a fundamental distinction between a case predicated on fraud in the inducement, and a case based upon fraud in the inception. In the former case the fraud renders the contract voidable, and to avoid it an offer to rescind is necessary. In the case of fraud in the inception (which is the present case) the writing is void *ab initio,* and need not be formally rescinded as a prerequisite to a right of avoidance. (*La Marche* v. *New York Life Ins. Co.,* 126 Cal. 498 [58 P. 1053]; *Raynale* v. *Yellow Cab Co.,* 115 Cal.App. 90 [300 P. 991]; *Wagner* v. *McManus,* 2 Cal.App.2d 544 [38 P.2d 204]; Restatement, Contracts, § 479.)

Appellant next urges that the findings that respondent performed all conditions required by the policy, and that the arthritis existed before December, 1936, are unsupported. It is admitted that respondent gave the notice required by the policy in July, 1936, at the inception of the gall bladder disability. It is admitted that during the twelve months, July of 1936 to June of 1937, monthly disability notices prepared by respondent's doctors were filed with the company as required by the policy. It is conceded by respondent that none of these reports stated that respondent was suffering from arthritis. Obviously, notices after July of 1937 were excused because of the fraud of appellant. While it is true that respondent at no time filed a notice specifically referring to the arthritic condition, such notice was not indispensable. According to the medical evidence produced by respondent the arthritic condition was caused by, was co-existent with, and related back to the original gall bladder infection. In other words, the arthritic condition was not a separate and

distinct disability. It is not a case where respondent was disabled by the gall bladder condition, and then later disabled by arthritis. According to the evidence most favorable to respondent the arthritic condition was merely a continuation of the gall bladder condition. It was a manifestation and direct outgrowth, another symptom of the same diseased condition. Keeping in mind the rule that the provision requiring notice must be strictly construed against appellant, it seems quite clear that notice of the infection to the gall bladder included notice of all manifestations of that disease, including notice of the arthritis. This interpretation of the evidence, which was the interpretation placed upon it by the trial court, serves to distinguish this case from *Davern* v. *Travelers' Equitable Ins. Co.*, 172 Minn. 19 [214 N.W. 468] and *Dullum* v. *Northern Life Ins. Co.*, —— Ore. —— [127 P.2d 749], and similar cases. In those cases, though suffering from some sickness or injury during the life of the policy which ultimately resulted in disability, the disability did not occur until after the policies were canceled. It was held that the insured was not entitled to disability benefits. But in the instant case the respondent became disabled within the meaning of the policy in June, 1936, during the life of the policy. Required notices were given. That disability, without a break in the time element, was continuous up to the time of trial. That disability consisted of an infection which first affected the gall bladder, and then resulted in arthritis. The finding of the court is that "during the year 1936 . . . while said policy was in full force and effect, plaintiff, by reason of illness and disease, to wit: gall bladder infection and a chronic arthritic condition, became totally disabled" and has remained disabled. Under the interpretation of the evidence above given it is immaterial whether or not the arthritic condition existed prior to December of 1936 when the policy was canceled. The infection which caused the gall bladder condition and the arthritis, admittedly existed prior to that date, and the company had full notice of this infection. However, it should be mentioned that, although respondent told his doctor that the arthritis did not appear until after the February, 1937, operation, there is ample evidence that the crippling and disabling effects of that disease had appeared prior to December, 1936. Dr. Eldridge testified that the arthritic condition he observed in September, 1937, had existed a long time and in his opinion had existed in 1936. Respondent's

daughter testified that in November, 1936, her father's hands and arms were so crippled that he could not put on or take off his coat, and that he could not close his hands. Miss Jolly, one of respondent's nurses at the rest home, testified that in that period respondent's hands were no use to him, that he could not dress or undress himself, and that he could not cut his food.

Appellant makes some point of the fact that respondent discovered the clause relating to the $25 payment in November, 1938, and was informed by the Insurance Commissioner in that month of the fact that the documents that had been signed on July 2, 1937, were releases, but did not file suit until September, 1940. No contention is or can be made that the cause of action was barred by the statute of limitations, but it is urged that respondent was guilty of laches, and that appellant has been prejudiced by respondent's failure to rescind or sue promptly. As already pointed out, no formal rescission was necessary. The prejudice alleged to exist is that because of the delay appellant was deprived of the opportunity of making periodic physical examinations of respondent. The obvious answer to this contention is that the reason appellant was deprived of this opportunity was that it fraudulently secured the releases in July of 1937. In view of the finding of fraud, amply supported by the record, appellant is in no position to urge laches successfully against the defrauded respondent.

The last point urged is that the judgment is too broad and prejudicially erroneous in that it decrees "that the Insurance Policy sued upon . . . is hereby declared to be in full force and effect." Appellant seems to fear that if respondent should recover from the present disability and then suffer a new disability he would be entitled, under this judgment, to new disability benefits although the policy, except as to the then existing disability, was canceled in December, 1936. Appellant's fears on this point are unfounded. All that the court adjudicated by the challenged phrase was that the policy is still in force and effect so far as appellant's obligation to pay $25 a month to respondent is concerned under the existing disability. So interpreted, appellant is in no way prejudiced by this portion of the judgment.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.