[L. A. No. 19345. In Bank. May 29, 1947.]

JOHN V. NEFF, as Administrator With the Will Annexed, etc., Appellant, v. NEW YORK LIFE INSURANCE COMPANY (a Corporation), Respondent.

C. P. Von Herzen and Hunter R. Skinner for Appellant.

Meserve, Mumper & Hughes, Edwin A. Meserve and Roy L. Herndon for Respondent.

SPENCE, J.—Plaintiff, as administrator of the estate of Arthur V. Neff, deceased, brought this action to recover a ten-year accrual of disability payments to which the decedent was allegedly entitled at the time of his death under the terms of a life insurance policy, and to recover also the amount of the annual premiums on the policy which the decedent paid during said period. Issue was joined upon plaintiff's second amended complaint, which pleaded, as successive causes of action, defendant's fraud and mistake in its representation of the insured's rights under the disability clause of his

policy. At the commencement of the trial, and after the first witness was sworn, defendant interposed an objection to the introduction of any evidence, on the ground that "the second amended complaint shows on its face that the alleged causes of action are barred by the statute of limitations" and consequently fails to show any cause of action. The objection was sustained over plaintiff's offer of proof, and judgment for defendant was entered. In appealing from that judgment, plaintiff argues that defendant's conduct estops it from relying upon the statute in avoidance of plaintiff's claim. But assuming the truth of all of plaintiff's allegations, as required under the circumstances of the trial court's ruling, plaintiff's position cannot be sustained.

From the first cause of action in the second amended complaint, it appears that in December, 1926, the insured was totally disabled by tuberculosis of both lungs. On or about April 1, 1927, the insured presented due written proof, as required by the terms of his policy, informing defendant that he had "become wholly and presumably permanently disabled by bodily disease," that he "was then and would presumably continue to be prevented from engaging in any occupation whatsoever for remuneration or profit," and that such disability had "existed continuously for more than sixty (60) days before date of such proofs"; and at that time the insured requested "defendant to provide for him and pay to him such benefits as he may have been entitled to under the terms of said policy." The policy, a copy of which is attached to said complaint, provides, on its front page, that defendant would pay to the insured $300 per annum "during the lifetime of the Insured, if the Insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof"; and section 1, on the inside of the policy, provides that said benefits would be paid when the insured "has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit. . . ." The policy also provides that the annual premiums would be waived during the continuance of such total and presumably permanent disability.

It is further alleged in the first cause of action that defendant, knowing that insured was disabled within the meaning of the policy, "fraudulently, unlawfully and with the

intent to deceive and defraud'' the insured, "represented" to him that "he was not entitled to any benefits under said policy" by reason of his disability and "fraudulently, wrongfully and unlawfully disclaimed any and all liability under the disability benefits of said policy on the ground that it did not appear to" defendant that the insured "was 'permanently, continuously and wholly prevented thereby, for life, from pursuing some gainful occupation' "; that the policy did not require that the insured present proof that he was disabled *"for life"* and "defendant well and truly knew that such wrongfully required proof could not possibly be furnished during *his* lifetime"; that the insured "relied until the date of his death" upon defendant's representations as to his rights under the policy, made no further claim for disability payments and continued to pay the annual premiums; and that said "disease and disability continued until and caused his death" on August 28, 1937.

It is further alleged in the first cause of action that the insured's widow, who was the beneficiary of the life insurance provisions in the same policy and who was the sole beneficiary and executrix named in his will, "requested the defendant to . . . pay to her such sums as were then due" under the policy, and that defendant "fraudulently" represented that "payment of the face of the policy and accrued dividends" were the only sums due her; that by reason of said representations and defendant's concealment of its liability for the accrued "disability benefits" and the "wrongfully . . . collected" premiums, she was induced in September, 1937, to surrender the policy to defendant upon receiving credit for the life benefit only, and she failed to offer the insured's will for probate or to prosecute the claim of his estate for the accrued disability benefits and annual premiums; and that she died on April 1, 1943. It is finally alleged that in March, 1943, during the widow's last illness and when she was "an incompetent," plaintiff, who is the son of the insured and his said widow, discovered correspondence had between insured and defendant in 1927, which caused him to consult counsel as to the existence of this cause of action; and that a copy of the policy "herein sued upon" was then obtained from defendant.

Plaintiff's second cause of action correlates the above sequence of events with defendant's alleged mistake in its successive dealings with the insured and the widow as to the pertinent provisions of the policy.

The original complaint was filed on December 18, 1943, some nine months after plaintiff's discovery of the correspondence of 1927 setting forth defendant's disclaimer of liability on the disability claim in question. Plaintiff seeks to recover: (1) ten annual disability benefits—1928 to 1937, inclusive—claimed to have accrued in favor of the insured under the terms of the policy; and (2) ten annual premiums claimed to have been improperly collected from the insured during the same period. It is apparent that the applicable statute of limitations is the four-year period prescribed by subdivision 1 of section 337 of the Code of Civil Procedure, and that plaintiff pleads defendant's fraud and mistake as falling in the same category with respect to considerations of timeliness in discovering the alleged cause of action.

In resolving the question of the correctness of the trial court's judgment against plaintiff on the basis of his pleading and offer of proof, the legislative policy in prescribing a period of limitations for the commencement of actions must be borne in mind. ''The statute of limitations is a statute of repose, enacted as a matter of public policy to fix a limit within which an action must be brought, or the obligation is presumed to have been paid, and is intended to run against those who are neglectful of their rights, and who fail to use reasonable and proper diligence in the enforcement thereof. . . . These statutes are declared to be 'among the most beneficial to be found in our books.' 'They rest upon sound policy, and tend to the peace and welfare of society;' . . . The underlying purpose of statutes of limitation is to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution.'' (1 Wood, Limitations, pp. 8-9.)

However, plaintiff relies on the rule in this state that a party, by reason of the fraudulent concealment of a fact, upon the existence of which the cause of action depends, may be estopped to set up the defense of the statute of limitations. (*Kimball* v. *Pacific Gas & Electric Co.*, 220 Cal. 203, 210 [30 P.2d 39]; *Pashley* v. *Pacific Electric Railway Co.*, 25 Cal.2d 226, 229-232 [153 P.2d 325].) In line with this position plaintiff argues that defendant, either through fraud or mistake in the interpretation of its policy, concealed the ''fact'' of the insured's right to disability benefits in consequence of his submission of proof to defendant in 1927, and that such conduct tolled the running of the statute upon the

insured's claim until plaintiff discovered the "misrepresentation" in 1943, sixteen years later. Accordingly, plaintiff cites defendant's letter of May 4, 1927, to its agent, which was promptly transmitted to the insured, in rejection of his claim for disability benefits. This letter, introduced in the record by plaintiff as part of his offer of proof, reads, so far as here material, as follows: "Please advise the insured under the above numbered policy that the Company has now completed its investigation in respect to his claim for disability benefits and from the evidence submitted and information obtained by the Company, it does not appear to the Company that he is wholly and permanently disabled within the meaning of the provision in the policy. It does not appear that he will be permanently, continuously and wholly prevented thereby, for life, from pursuing some gainful occupation. The Company does not feel justified, therefore, in approving claim for disability benefits."

■ Conceding for the purposes of discussion here that the insured was disabled within the meaning of the policy and eligible to the benefits provided thereunder, it is apparent that defendant's above-quoted letter was an unconditional denial of liability to the insured and gave rise to an immediate cause of action in favor of the insured. At that time the insured was in possession of all the facts concerning the state of his health and the extent of his disability, and he likewise was in possession of the policy defining his insurance rights. However, the insured made no further claim on defendant but continued for ten years to pay the annual premiums on the policy until his death in 1937. Thereafter that same year, the widow, upon being informed by defendant that she "was entitled to receive only the death benefits and accrued dividends in accordance with the express terms and provisions of the [insurance] contract," surrendered the policy and did not question defendant's reiteration of its position as to nonliability for any benefits owing to the insured. Then six years later, in 1943, plaintiff "discovered" the "correspondence had between insured and defendant in 1927" and consulted counsel preliminary to commencing this action. But plaintiff's "act of discovery" uncovered no fact that was not known to the insured during the last ten years of his lifetime and likewise known to his widow, who died six years later. The situation here is simply one where plaintiff undertook in 1943 an inquiry which could have been made as readily

by the insured as early as 1927 when defendant, by letter, first rejected his claim and thereafter consistently maintained that position of nonliability for the succeeding ten years of the insured's life without challenge on his part. Then in 1937, the widow, having at her disposal the same writing from defendant for investigation had she elected to assert any surviving rights of the insured to disability benefits, nevertheless failed to have herself appointed his personal representative for the purpose of prosecuting any claim which the insured might have had against defendant and was content simply with the "death benefits" and "accrued dividends" owing to her by defendant as life beneficiary under the policy. That the widow thereafter surrendered the policy to defendant at its request is of no significance with respect to the timeliness of the assertion of a claim for disability benefits owing to the insured, for defendant's letter of disclaimer of liability, as above mentioned, remained in her possession until her death, and had she chosen to make such investigation as plaintiff later undertook upon the same factual premise, presumably she too might have obtained from defendant a copy of the policy which she had previously relinquished. Under the circumstances the conclusion is inescapable that plaintiff, as personal representative of the insured, belatedly attempts to assert a cause of action that allegedly accrued to the insured as the result of an alleged representation which was made sixteen years earlier by defendant and which was allowed to stand undisputed for that entire period of time by the aggrieved parties—the insured and his widow—though the same facts on which plaintiff here relies for relief were at all times known to them.

"[A] failure to discover a cause of action does not, as in the case of its fraudulent concealment, suspend the running of the statute of limitations." (*Scafidi* v. *Western Loan & Building Co.,* 72 Cal.App.2d 550, 566 [165 P.2d 260].) In line with this principle such cases as *Kimball* v. *Pacific Gas & Electric Co., supra,* 220 Cal. 203, and *Pashley* v. *Pacific Electric Railway Co., supra,* 25 Cal.2d 226, cited by plaintiff, stand upon a wholly distinguishable factual premise. Thus, in the Kimball case there was concealed from plaintiff a fact essential to his statement of a cause of action against the particular corporate defendant for personal injuries—the employment relationship between the person causing the injuries and said corporate defendant—and it was held that

such concealment amounted to a fraud which tolled the statute of limitations. And in the Pashley case defendant's employees concealed from plaintiff certain material facts concerning the extent of the eye injury which served as the basis for the measurement of his recovery and which would obviously influence his commencing suit, so that the statute was tolled while such suppression of plaintiff's cause of action· endured. However, here there is no comparable factor of deception involved, as defendant concealed no fact but plainly stated that it denied liability upon the insured's disability claim; and for sixteen years, until plaintiff chose to challenge the merits of such rejection, defendant's stand of nonliability went uncontested.

Plaintiff argues that defendant's interpretation of its policy so as to relieve it of liability misled the insured and his widow as to the insured's right to disabilty benefits and so, in effect, amounted to the concealment of the "fact" of the insured's cause of action. In this connection plaintiff cites the settled rule that an insurer has the duty of exercising good faith in its dealings with the insured and cannot take any unfair advantage of him. (See 12 Appleman, Insurance Law and Practice, § 7291, p. 390; *Farrar* v. *Policy Holders Life Insurance Assn.*, 3 Cal.App.2d 87, 93 [39 P.2d 229].) But defendant's acts cannot be relied upon to bring plaintiff within the rule mentioned for that would mean that no insurer could deny liability without indefinitely suspending the running of the statute of limitations until perchance the insured, or his heirs after his death, might obtain at some future time legal advice indicating the view that liability existed. Here defendant clearly stated in its letter of May 4, 1927, that it did not feel justified in approving the insured's claim for disability benefits as "from the evidence submitted and information obtained by the Company, it does not appear to the Company that he is wholly and permanently disabled within the meaning of the provision in the policy." Defendant, concealing no fact from the insured, was free to take this position. The insured, knowing all the facts which were known to defendant, was then free to litigate the issue of the liability which defendant had denied. It is a matter of common knowledge that there are often differences of opinion concerning liability under insurance policies and no mere denial of liability, even though it be alleged to have been made through fraud or mistake, should

be held sufficient, without more, to deprive the insurer of its privilege of having the disputed liability litigated within the period prescribed by the statute of limitations.

It is clear that the issue to be determined here—the timeliness of plaintiff's assertion of the alleged cause of action—has no concern with the settled rule cited by plaintiff that in the construction of "uncertainties or ambiguities" in an insurance policy, "the one which is most favorable to the insured and which will give life, force and effect to the policy should be adopted." (*Narver* v. *California State Life Insurance Co.*, 211 Cal. 176, 180 [294 P. 393].) Nor, contrary to plaintiff's theory, is this a situation similar to one where an insured leaves entirely in the hands of the insurer the matter of providing him with full insurance coverage and is entitled to rely on the insurer not to mislead him by issuing a policy that gives him less protection (*Golden Gate Motor Transport Co.* v. *Great American Indemnity Co.*, 6 Cal.2d 439, 442 [58 P.2d 374]); and in such circumstances the insured's failure to check the terms of his policy upon receiving it will not prevent his recovery for a loss that he relied upon the insurer to cover. (*Raulet* v. *Northwestern etc. Ins. Co.*, 157 Cal. 213, 229-230 [107 P. 292].)

Likewise an analysis of the equitable estoppel cases cited by plaintiff discloses that they were decided upon distinguishable factual considerations. First to be noted are the cases where the estoppel doctrine was applied to sustain the plaintiff but the question of the statute of limitations was not involved: *Morrison* v. *Mutual Life Insurance of New York*, 15 Cal.2d 579, 588 [103 P.2d 963]; *Glickman* v. *New York Life Insurance Co.*, 16 Cal.2d 626, 634-635 [107 P.2d 252, 131 A.L.R. 1292]; and *Bonacci* v. *Massachusetts Bonding & Insurance Co.*, 58 Cal.App.2d 657, 662-663 [137 P.2d 487]. Second to be noted are the cases where the statute of limitations was an issue, and under varying and distinctive factual premises the estoppel doctrine was applied against its assertion: *Rutherford* v. *Rideout Bank*, 11 Cal.2d 479, 486 [80 P.2d 978, 117 A.L.R. 383], and *Laraway* v. *First National Bank of La Verne*, 39 Cal.App.2d 718, 728-729 [104 P.2d 95], where there was a confidential relationship between the parties which operated to excuse the plaintiff from failing to make earlier discovery of the cause of action; *Adams* v. *California Mutual Building & Loan Assn.*, 18 Cal.2d 487, 489 [116 P.2d 75], *Calistoga National Bank* v. *Calistoga Vine-*

*yard Co.,* 7 Cal.App.2d 65, 72 [46 P.2d 246], and *Miles* v. *Bank of America etc. Assn.,* 17 Cal.App.2d 389, 397-399 [62 P.2d 177], where delay in the commencement of action was due to reliance upon representations that an amicable adjustment or determination of the claim would be made without suit; and *Bollinger* v. *National Fire Insurance Co.,* 25 Cal.2d 399, 410-411 [154 P.2d 399], where plaintiff brought timely action on an insurance policy but through error of the trial court a nonsuit was entered against him, and his new action filed in another court would have been commenced well within the shortened limitations period provided by the insurance contract had it not been for the insurer's procurement of a number of continuances which delayed the parties in reaching trial on the first action—a peculiar sequence of events deemed to be of controlling importance in suspending the running of the statute of limitations and relieving plaintiff from suffering a "technical forfeiture" of his insurance rights.

The significant factors to be noted here are the following: (1) defendant plainly advised the insured, and later his widow, that the insured had no disability rights under the policy; (2) there was no confidential relationship between defendant and the insured or his widow which would relieve either of them from the duty to make diligent inquiry into the merit of defendant's position if either deemed it to be not well taken under the terms of the insurance contract (*Shapiro* v. *Equitable Life Assurance Soc.,* 76 Cal.App.2d 75, 87-89 [172 P.2d 725]); and (3) there were no deceptive assurances by defendant tending to lull the insured or his widow into a sense of security and to forbear suit for the statutory period (*Jackson* v. *Master Holding Corp.,* 16 Cal.2d 824, 828 [108 P.2d 673]), but rather defendant's unconditional denial of liability was sufficient to put each on notice that legal action would be required to cause defendant's recognition of the insured's disability claim.

The statute of limitations here appears as "a defense . . . upon the very face of" plaintiff's second amended complaint and he has failed to plead facts which would estop defendant from asserting such defense. (*Fleishbein* v. *Western Auto Supply Agency,* 19 Cal.App.2d 424, 427 [65 P.2d 928]; *Cohen* v. *Metropolitan Life Insurance Co.,* 32 Cal.App. 2d 337, 347 [89 P.2d 732].) Any other view would practically nullify the legislative policy in prescribing a limita-

tion upon the time within which suit may be commenced upon an insured's claim after the insurance company's unconditional denial of liability thereon, when all facts essential to the statement of a cause of action are within the knowledge of the aggrieved party. As defendant states in illustration of this point, "if, perchance, plaintiff had not found this [May, 1927] correspondence when he did, then insured's grandson, rummaging through his grandfather's papers forty years after his death, might just as well have 'discovered' this purported cause of action, petitioned for letters of administration upon the insured's estate, and filed this action in the year 1977." But "statutes of limitations are vital to the welfare of society . . . they promote respose by giving security and stability to human affairs . . . they stimulate to activity and punish negligence." (*Wood* v. *Carpenter,* 101 U.S. 135, 139 [25 L.Ed 807]; see, also, *Fontana Land Co.* v. *Laughlin,* 199 Cal. 625, 636 [250 P. 669, 48 A.L.R. 1308], and cases there cited.)

In these circumstances the trial court did not err in sustaining defendant's objection to plaintiff's introduction of evidence on the issue of the statute of limitations. The record discloses that plaintiff was urged to make his "offer of proof as complete as" possible, but he still was unable to show an "enforceable cause of action." ■ However, plaintiff cites section 597 of the Code of Civil Procedure as requiring the trial court nevertheless to proceed to the trial of such specific defense as the statute of limitations when pleaded in defendant's answer. Such position cannot be sustained. The cited code section merely states a procedural rule which authorizes the trial court in proper cases to avoid an unjustifiable expenditure of time in the trial of issues relating to the merits of an action when it appears after the trial of the special defense that plaintiff in any event could not recover. (*Booth* v. *Bond,* 56 Cal.App.2d 153, 156-157 [132 P.2d 520].) It has no application here where it can be clearly seen, both from plaintiff's pleading and his "comprehensive" offer of proof, that he cannot present a cause of action not barred by the statute.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., concurred.

Shenk, J., and Edmonds, J., did not participate herein.

CARTER, J.—I dissent.

The majority opinion places the stamp of approval upon a rank and palpable fraud perpetrated by defendant upon its sick, disabled and unsuspecting policy holder. True, the majority does this under the guise of protecting the defendant against the assertion by plaintiff of a stale claim, but in so holding the majority disregards the realities and imposes upon the policy holder a burden and duty beyond the realm of reasonableness, and permits the insurance company to avoid its obligation because it was able to conceal its fraud and deceit for a long enough period of time to permit it to interpose the plea of the statute of limitation. Such a holding is contrary to the modern concept of the relationship between insurer and insured which wisely places upon the insurer the imperative duty to speak truthfully, if it speaks at all, respecting the rights of its insured. And if it fraudulently conceals from its insured matters which should have been disclosed, it should not be permitted to rely upon the rigid rules of law applicable to a case where such relationship does not exist. Many lawyers and almost every layman will admit that a reading of their insurance policies leaves them in a state of confusion and uncertainty, and it is the common practice to seek advice from their insurance companies as to their rights as insureds. True they are not required to accept such advice, but it is a matter of common knowledge that most laymen do. Thus the insurer becomes the adviser of its insureds as to their respective rights and obligations, and it must be conceded that such advice is accepted and followed in a vast majority of cases. Such is the situation in the case at bar, and defendant should not be permitted to evade its obligation to its insured because of the latter's failure to discover that he had been ill advised and for that reason had not asserted his rights at an earlier date.

I am in full accord with the views expressed by the District Court of Appeal, Second District, Division One, when this case was before that Honorable Court, and I adopt, as a part of this dissent, the opinion of that Court prepared by the Honorable Thomas P. White, Associate Justice of said Court, and concurred in by the Honorable John M. York, Presiding Justice, and the Honorable Wm. C. Doran, Associate Justice thereof. Said opinion is as follows: "This action was brought by appellant as administrator of the estate of Arthur V. Neff, deceased, seeking to recover the amount of

certain disability benefits to which said decedent was allegedly entitled at the time of his death under the terms of an insurance policy, and also the amount of the annual premiums on the policy which the decedent paid during the last ten years of his lifetime.

"The action went to trial upon plaintiff's second amended complaint, general demurrers to the prior complaints having been sustained. Defendant did not demur to the second amended complaint, but filed an answer thereto, denying the allegations as to fraud, and mistake and pleading that the purported causes of action were barred by the statute of limitations: Subdivision 1 of section 337; subdivision 4 of section 338; and section 353 of the Code of Civil Procedure.

"At the commencement of the trial, and after the first witness was sworn, defendant interposed an objection to the introduction of any evidence, on the ground that 'the second amended complaint shows on its face that the alleged causes of action are barred by the Statute of Limitations' and consequently fails to show any cause of action. The objection was sustained and judgment for defendant entered. Plaintiff has appealed from the judgment.

"From the first cause of action in the second amended complaint, it appears that in 1926 insured was totally disabled by tuberculosis of both lungs. On or about April 1, 1927, insured presented due written proof in accordance with the requirements of the policy 'that he had, on said December 1st, 1926, become wholly and presumably permanently disabled by bodily disease, and that said proofs informed defendant he was then and would presumably continue to be prevented from engaging in any occupation whatsoever for remuneration or profits, and that such a disability had by said April 1st, 1927, existed continuously for more than sixty (60) days before date of such proofs; and at said time and place, the said insured requested the defendant to provide for him and pay to him such benefits as he may have been entitled to under the terms of said policy.' In said complaint it is further alleged 'That the defendant, New York Life Insurance Company, on or about May 7th, 1927, fraudulently, unlawfully and with the intent to deceive and defraud the said insured, represented to the said insured that he was not entitled to any benefits under said policy by reason of the disability from which he was then suffering and fraudulently, wrongfully and unlawfully disclaimed any and all liability

under the disability benefits of said policy on the ground that it did not appear to the defendant that the plaintiff was ''permanently, continuously and wholly prevented thereby, for life, from pursuing some gainful occupation''; that the said insured believed the fraudulent, unlawful and wrongful representations pertaining to said policy, and the rights of said insured thereunder, and relied until the date of his death, upon the statements and representations of the defendant with respect thereto, and was thereby prevented from making any further claims and from receiving any benefits thereunder at any time during his lifetime. That at the time of said representations and statements by the defendant, as aforesaid, and thereafter during the life of the said insured, the defendant well and truly knew the condition of the said insured and nature and character of the disability from which he suffered, which said disease and disability was total and presumably permanent within the meaning of said policy of life insurance, and that said statement and representation on the part of the defendant were made with the intent to deceive the insured, and to enable the said defendant to withhold the disability benefits to which the said insured was then and thereafter entitled, and that said insured was actually deceived thereby, and believed that said statements and representations were true and correct. That in truth and in fact said policy did not contain any requirement that the insured must show that the disability from which he was then suffering would permanently, continuously, and wholly prevent the said insured *for life,* from pursuing some gainful occupation, and the defendant well and truly knew that such wrongful required proof could not possibly be furnished during *his* lifetime.' In said second amended complaint it is further alleged that insured's widow (who was the beneficiary of the life insurance provided for by the same policy, and who was sole beneficiary and executrix named in the will of the insured) likewise relied upon and believed defendant's fraudulent representation made to her after the death of insured in 1937, that no disability benefits had accrued under the terms of said policy, and by such fraudulent misrepresentation and concealment of the liability of defendant under the correct interpretation of said policy, she was induced to surrender said policy of insurance to defendant upon receiving credit for the life benefit, and, believing defendant's representation that insured was entitled to no disability benefits under said

policy, she failed to offer insured's will for probate or to press the claim of his estate for such disability benefits. She died April 1, 1943. In March, 1943, during her last illness, plaintiff (who is the son of insured and his said widow) discovered correspondence had between insured and defendant in 1927, which caused him to inquire as to the existence of the instant cause of action. December 10, 1943, some nine months after the plaintiff's discovery of the facts allegedly constituting such cause of action, the complaint was filed.

"On the instant appeal, we are required to assume the truth of all allegations of the complaint, which undoubtedly states a cause of action on contract. Neither subdivision 4 of section 338 nor section 353 of the Code of Civil Procedure can be applied, but, as contended by respondent, the time limited by subdivision 1 of section 337 ordinarily would have commenced to run against each annual instalment as it became due under the disability benefit clause of the policy, from the year 1928 to 1937, respectively.

"Appellant calls our attention to cases holding that 'a fraudulent concealment of the fact, upon the existence of which the cause of action accrues, is a good answer to the plea of the statute of limitations' (*Kane* v. *Cook,* 8 Cal. 449; *Kimball* v. *Pacific Gas & Elec. Co.,* 220 Cal. 203 [30 P.2d 39]; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.,* 66 Cal.App.2d 376, 380 [152 P.2d 501].)

"Respondent's argument that insured's condition was known to him and could not have been concealed by the insurer is beside the point. From the complaint, it clearly appears that the insurer concealed from the insured and his widow the fact that disability benefits had accrued under the terms of the policy of insurance. That was a fact the existence of which was essential to the cause of action. Such alleged concealment is not excused by the fact that the insured was in possession of the policy. (*Menk* v. *Home Ins. Co.,* 76 Cal. 50 [14 P. 837, 18 P. 117, 9 Am.St.Rep. 158]; *Vierra* v. *New York Life Ins. Co.,* 119 Cal.App. 352 [6 P.2d 349].)

"The front page of the policy herein sued upon (a copy of which is attached to the second amended complaint) provides that defendant will pay to the insured $300 per annum 'during the lifetime of the insured, *if the insured becomes wholly and permanently disabled* before age 60, subject to all the terms and conditions contained in section 1 hereof'; and section 1 (in the fine print on the inside of the policy) pro-

vides that said benefits shall be paid when the insured 'has become wholly disabled by bodily . . . disease so that he is and will be *presumably* thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit. . . .' (Emphasis added.)

"From the second amended complaint, it clearly appears that the insured presented to the insurer proof of disability which he believed would, and which, as alleged, if true, did in fact meet the requirements of the policy and entitled the insured to disability benefits. It is alleged that respondent, in refusing to make the payments requested by the insured, departed from the language of the policy and attempted to explain its meaning to the insured. The complaint alleges that the insured understood from such explanation that the policy required proof that the insured *was* disabled for his entire life and not merely that *presumably* he was so disabled. Such interpretation of the policy, it is alleged, was erroneous. That it was first adopted by respondent (not the insured) is shown by the allegations of the second amended complaint that insured presented due proof of disability as required by the policy, that respondent rejected his claim on the ground that it did not appear from that insured *was* 'permanently, continuously, and wholly prevented thereby, *for life,* from pursuing some gainful occupation.' (Emphasis added.) When an insurer undertakes to explain the meaning of its policy, it owes a duty to the insured to do so accurately and truthfully (*Morrison* v. *Mutual L. Ins. of N. Y.,* 15 Cal.2d 579, 588 [103 P.2d 963]), and when an insurer varies the language of a policy in rejecting a claim, it does so at its own peril. It would be palpably unjust to permit an insurer to take advantage of the insured's delay in bringing action when such delay as is alleged herein was occasioned by the fraudulent and misleading statements of the insurer. (*Bonacci* v. *Massachusetts Bonding & Ins. Co.,* 58 Cal.App.2d 657, 666 [137 P.2d 487].) Such alleged erroneous interpretation of a policy and statements respecting the rights of the insured may amount to fraudulent concealment of a fact upon the existence of which the cause of action accrues, and if so, tolls the running of the statute of limitations until the death of the insured's widow and successor in interest on April 1, 1943. The instant action was filed December 10, 1943, well within the period provided by subdivision 1, section 337, of the Code of Civil Procedure, if the insured's widow had a cause of action at the time of her death.

"In the instant action it is alleged that the insured presented his claim for disability under the terms of the policy, in that he had become 'wholly disabled by bodily . . . disease so that he is and will be *presumably* thereby permanently and continuously prevented from engaging in any occupation whatsoever for renumeration or profit. . . .' (Emphasis added.) In rejecting the insured's claim the insurer did not predicate such rejection on the ground that the proofs submitted did not establish the fact that the insured would be 'presumably' permanently disabled, but on the ground that the insurer interpreted the policy to mean that before the insured was eligible for benefits thereunder it must appear to the satisfaction of the insurer that the insured *'will be'* (not presumably) 'permanently and continuously and wholly prevented thereby, *for life,* from pursuing some gainful occupation.' Had the insurer rejected the insured's claim on the ground that he would not, under the language of the policy, be *'presumably'* permanently disabled, there can be no doubt that under the statute of limitations his action would be barred. But the insurer did not do that. Instead it proceeded to interpret the policy as requiring not presumptive evidence of permanent disability, but evidence satisfactory to the insurer that the insured would in fact be 'prevented thereby *for life* from pursuing some gainful occupation.' Nothing is said in the policy about disability for life, it provided only that satisfactory proof that the insured would 'presumably' be permanently disabled would suffice to entitle him to benefits. Had it not been for the allegedly incorrect interpretation put upon the terms of the policy by the insurer, the insured during his lifetime and his widow after his death might have taken the necessary steps to establish his or her rights under the policy as they understood its terms; but through the company's alleged representations the insured and his widow were led to believe that proof that he was 'presumably' permanently disabled was insufficient and that proof was required to show that he 'will be permanently, continuously and wholly prevented' by his affliction from pursuing some gainful occupation 'for life.' The second amended complaint alleges that such proof could not be furnished by the insured at any time during his life. The object and purpose of the contract being insurance or indemnity against disability, the courts in construing the rights and duties of the parties thereto should strive to effectuate that purpose.

The case before us involves an insurer whose duty of good faith in dealing with the insured is well established. (See 13 Appleman Ins. Law and Practice, 37; Vance on Insurance (1930) 74.)

"With reference to statutes of limitation, it might be observed that they are not so rigid as they are sometimes regarded, and the period of such statutes will be extended or tolled upon the occurrence of certain events. As was said in Bollinger v. National Fire Ins. Co., 25 Cal.2d 399, 411 [154 P.2d 399]: 'It is established that the running of the statute of limitations may be suspended by causes not mentioned in the statute itself. (Braun v. Sauerwein, 10 Wall. (77 U.S.) 218, 223 [19 L.Ed. 895]; Collins v. Woodworth, 109 F.2d 628, 629.) It is settled in this state that fraudulent concealment by the defendant of the facts upon which a cause of action is based (Kimball v. Pacific Gas & Elec. Co., 220 Cal. 203 [30 P.2d 39]) or mistake as to the facts constituting the cause of action (Davis etc. Co. v. Advance etc. Works, Inc., 38 Cal.App.2d 270 [100 P.2d 1067]; see 16 Cal.Jur. 505) will prevent the running of the period until discovery.'

"Respondent earnestly insists that appellant has not successfully pleaded an estoppel. Bearing in mind the duty owed by the insurer to the insured when the former undertakes to explain the meaning of the policy and the peril attaching to the insurer when in making such explanation it varies the language of the policy, we are persuaded that the facts pleaded in the second amended complaint and set forth in the offer of proof, unless controverted, were sufficient to raise an estoppel and toll the statute of limitations. (Morrison v. Mutual L. Ins. of N. Y., supra, pp. 588, 589; Bollinger v. National Fire Ins. Co., supra, p. 411.) Principles of equity and justice are controlling here and require that the second amended complaint be heard on its merits. The allegations of the second amended complaint set forth that the insured was induced to change his position with reference to his rights under the policy by reason of the statements and conduct of the insurer; that such statements were untrue, and that by reason of the acts and conduct of the insurer the insured suffered prejudice. This was sufficient to set in motion the doctrine of equitable estoppel.

"We have examined the cases of Fleishbein v. Western Auto S. Agency, 19 Cal.App.2d 424, 427 [65 P.2d 928]; Cohen v. Metropolitan Life Ins. Co., 32 Cal.App.2d 337, 347 [89

P.2d 732], and other cases relied upon by respondent, and are impressed that nothing therein contained militates against the conclusion at which we have herein arrived. The insured was not required to assume that the insurer would mislead him, and courts are inclined to hold that one can act upon the assumption that there exists no intention to cheat or defraud him. 'No one has a right, either in law or in morals, to complain because another has placed too great reliance upon the truth of what he himself has stated.' (*Togni* v. *Taminelli*, 11 Cal.App. 7, 14 [103 P. 899].) As was stated by this court in *Laraway* v. *First National Bank of LaVerne*, 39 Cal.App.2d 718, 730 [104 P.2d 95]: 'The fact, as urged by respondents, that means of knowledge were open to appellant, does not necessarily debar her from relief. It is only when the circumstances are such that inquiry becomes a duty that the failure to make it becomes a negligent omission. . . . We find nothing in the evidence here that would excite the suspicions of an ordinarily prudent person situated as appellant was or that would put him on inquiry. Even if we concede that some of the representations made by respondents related more or less to matters of opinion, nevertheless expressions of opinion, to avoid an action for deceit or fraud, should be of an opinion honestly entertained by the person making the same . . . (citing cases) . . . ; and whether representations are of a fact or matters of opinion depends largely on the circumstances.' (Citing cases.)

"Where the delay in commencing an action is induced by the conduct of the offending party, it cannot be availed of by him as a defense. An estoppel may also arise where a party has been induced by another 'to refrain from using such means or taking such actions as lay in his power, by which he might have retrieved his position and saved himself from loss.' (*Miles* v. *Bank of America etc. Assn.*, 17 Cal.App.2d 389, 399 [62 P.2d 177].) The same case, at page 398, is authority for the statement that 'An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped.'

"In *Bollinger* v. *National Fire Ins. Co., supra,* page 405, the court said: 'While courts are diligent to protect insurance companies from fraudulent claims and to enforce all regulations necessary to their protection, *it must not be forgotten that the primary function of insurance is to insure.* When claims are honestly made, care should be taken to pre-

vent technical forfeitures such as would ensue from an unreasonable enforcement of a rule of procedure unrelated to the merits.' (Citing cases.) (Italics added.) And at page 407 we find the following: 'Under the circumstances of the present case it would be manifestly unjust for this court to prevent a trial on the merits, which the law favors.' (Citing cases.)

"The second amended complaint states a cause of action. The judgment is therefore reversed and the cause remanded for a new trial."