Filed 11/7/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JUDY RANDLE, | B304970 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. BC579987 |
| FARMERS NEW WORLD LIFE INSURANCE COMPANY, | |
| Defendant and Respondent. | |

_____

APPEAL from a judgment of the Superior Court of Los Angeles County.  Stuart M. Rice, Judge.  Reversed and remanded.

Shernoff Bidart Echeverria, William M. Shernoff, Travis M. Corby and Cooper Johnson for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Margaret M. Drugan, Asim K. Desai, Matthew G. Kleiner and Andrea K. Williams for Defendant and Respondent.

_____

## SUMMARY

Plaintiff Judy Randle sued Farmers New World Life Insurance Company (defendant or Farmers) for breach of contract, breach of the covenant of good faith and fair dealing, and punitive damages in connection with a policy insuring the life of her ex-husband. The trial court granted summary judgment for defendant on those claims, concluding it was undisputed that the ex-husband remained the owner of the policy until he died, and that he had changed the beneficiaries on the policy, reducing his ex-wife's interest from 100 percent to 25 percent. Because the trial court failed to consider the terms of a divorce decree affecting ownership of the policy, and because defendant's agent repeatedly assured plaintiff, up to and after the ex-husband's death, that plaintiff remained the sole beneficiary, we conclude disputed issues of material fact prevent summary judgment.

Accordingly, we reverse the judgment and remand for further proceedings.

## FACTS

### 1. The Background

In 1992, plaintiff and her then-husband, Alan McConnell, procured a policy insuring Mr. McConnell's life. The Farmers policy would pay a death benefit of $250,000 and named plaintiff as the sole beneficiary. The insurance broker that obtained the policy for the couple was Hebson Insurance Agency, Inc. (Hebson). Hebson was owned by Mark Hebson, who was "an appointed agent with Farmers New World Life," and had been since 1972.

In 2004, plaintiff and Mr. McConnell divorced and entered into a stipulated divorce judgment (the divorce decree). The agreement in the divorce decree gave plaintiff "[a] beneficial

2

interest of one-quarter (1/4) of" the Farmers policy.
Mr. McConnell was required to maintain the policy for plaintiff's benefit "to the extent of her one-quarter beneficial interest," and was free to name any beneficiaries "as to his remaining 3/4ths interest." Plaintiff and Mr. McConnell were responsible for paying premiums for their respective interests in the policy. If either party decided to discontinue paying premiums, the divorce decree stated he or she "shall forfeit [her or his] ownership" as to his or her interest in the policy.

Specifically, as relevant here, the divorce decree stated: "If [Mr. McConnell] decides to discontinue paying the premium on his three-quarter (3/4th) interest, then he shall forfeit his ownership as to his three-quarter (3/4th) interest. He shall notify [plaintiff] in writing and assign the policy to [plaintiff] if she chooses to pay the premiums. If [plaintiff] should not so choose, then the policy shall lapse. If [plaintiff] does choose to accept the three-quarter (3/4th) interest, then [plaintiff] shall be free to name any beneficiaries she chooses."

In 2006, Mr. McConnell submitted a form to defendant, requesting a change in beneficiary. The form was signed by Mr. McConnell on May 4, 2006, and included with it were partial pages of the divorce decree. The requested change added the couple's three sons, so that plaintiff and their sons would each be 25 percent beneficiaries of the policy. The request form stated that "[t]his change of beneficiary shall take effect only when recorded by the Company, but when so recorded, whether the Insured be living or not, shall relate back to and take effect as of the date of this designation." The insurance policy itself stated that the change "must be signed by the owner and sent to us. The change will take effect on the date it was signed . . . ."

3

Defendant stamped Mr. McConnell's 2006 request "Update Only" and "Not Registered," because it did not include the complete divorce judgment. Defendant's internal procedures at that time required it to obtain a complete copy of a divorce judgment when processing a change of beneficiary form for a policy owner when divorce was involved. Specifically, under that procedure, defendant would send a letter requesting the spouse's signature and/or a photocopy of the certified divorce decree or other court-approved document. Mr. McConnell never gave a certified copy of the entire divorce decree to defendant. No one ever told plaintiff that Mr. McConnell had submitted the beneficiary change request to defendant.

In 2008, plaintiff began paying all the premiums on the policy. (She did so through a company of which she was the sole owner.)

From 2008 until after Mr. McConnell died in 2014, plaintiff believed she was the sole beneficiary under the policy. According to Mark Hebson, in 2008 Mr. McConnell was not paying premiums, which were being paid from the accumulation account in the policy. Mr. Hebson told plaintiff (because she was paying premiums for her one-quarter interest and Mr. McConnell was not paying any premiums) that the policy was going to lapse for nonpayment, as there was no money left in the accumulation account. Plaintiff told Mr. Hebson she would make the premium payments if she were maintained as the 100 percent beneficiary. He advised her that it was possible for her to remain the beneficiary "when she's not the owner of the policy." (Mr. Hebson had never seen the divorce decree.) Mr. Hebson told plaintiff that she did not need to become the listed owner to ensure she remained the sole beneficiary because Farmers would notify Hebson if the beneficiary were changed.

4

On April 11, 2014, Mr. McConnell died. A few days later, plaintiff informed defendant of his death, and "was told again that she was the only beneficiary under the Policy." On April 16, 2014, plaintiff submitted a claim for 100 percent of the policy benefits.

On April 18, 2014, defendant told plaintiff for the first time that "there was a dispute that she was the 100% policy beneficiary." Defendant told plaintiff Mr. McConnell had submitted a beneficiary change in 2006, to add the couple's three sons as beneficiaries, "but the request was not accepted or registered, because Farmers requested the full divorce decree and [Mr. McConnell] never sent it."

On April 23, 2014, one of the couple's sons provided defendant with a complete copy of the divorce decree.

During April, May and June, defendant indicated several times that it was a neutral stakeholder and might or would interplead the funds if plaintiff and her sons could not resolve the dispute on their own. Andrew LaMance, Farmers's claims examiner who decided how the claim should be paid out, later testified he wrote to plaintiff in May and again in June, stating if Farmers did not receive a signed agreement from all parties, "we will initiate the process of interpleading the funds . . . ."

On May 20, 2014, Mr. Hebson wrote to plaintiff, stating: "On several occasions over the past years, you have contacted my office to verify the primary beneficiary on file at Farmers New World Life. It was confirmed that it was you and you continued to pay the premiums until [Mr. McConnell's] time of death." One of those occasions was on March 5, 2013, when Hebson faxed her, on defendant's letterhead, that "Farmers New World Life does not show any change in the Beneficiaries."

5

Hebson's office manager, Alice Brooks, also knew that Mr. McConnell stopped paying premiums on the policy, and plaintiff started paying all the premiums, in 2008. Her understanding was that by making all the premium payments, plaintiff was taking over Mr. McConnell's interest in the policy. According to Ms. Brooks, plaintiff informed her that she (plaintiff) had an agreement, a divorce decree, with Mr. McConnell concerning the policy, and she (Ms. Brooks) "knew that [plaintiff] agreed to pick up [Mr. McConnell's] portion of the premium for his interest in the policy."

In June 2014, Mr. LaMance received a letter from plaintiff's counsel, advising Farmers that plaintiff intended to petition the court for an order determining the rightful beneficiary and requesting Farmers make no further determinations until the court made a ruling.

Mr. LaMance later testified he knew plaintiff was paying the premiums, and that "[t]here was a discrepancy between a third-party document [the divorce decree] and the four corners of a policy contract."

Then, on August 11, 2014, defendant paid the policy proceeds to plaintiff and her three sons, as designated in the 2006 request for change of beneficiary.

## 2. The Litigation

In April 2015, plaintiff filed a complaint against defendant and Hebson. She alleged causes of action for breach of the covenant of good faith and fair dealing and breach of contract against defendant; a claim for promissory estoppel against defendant and Hebson; and a claim for professional negligence against Hebson.

The complaint alleged, among other things, that on April 22, 2014, plaintiff sent defendant a detailed letter

6

explaining she was the owner of the policy pursuant to the divorce decree, and she had been assured on multiple occasions by both defendant and Hebson that she remained the 100 percent beneficiary; that defendant was given a copy of the divorce decree on April 23, 2014; the divorce decree "clearly confirmed that [plaintiff] was the rightful owner of the Policy after she began paying 100% of the Policy [premiums] in September 2008"; and defendant breached its duty of good faith and fair dealing by notifying her numerous times that she was the sole beneficiary and then, after Mr. McConnell's death, informing her she was not, thus preventing her from filing a change in beneficiary form that would name her as sole beneficiary.

Hebson moved for summary judgment on plaintiff's claim for professional negligence. (The parties stipulated to the striking of the promissory estoppel claim against Hebson.) The trial court granted Hebson's motion, and we affirmed the judgment for Hebson, concluding an insurance broker has no duty, "for the duration of a life insurance policy, to advise clients how to protect their interests in those policies." (*Randle v. Farmers New World Life Ins. Co.* (May 18, 2018, B276579) [nonpub. opn.].)

Then, in January 2019, defendant moved for summary judgment or summary adjudication of issues. Defendant contended plaintiff could not establish a breach of contract because she was never the owner of the policy, and her actions "post-2008" were inconsistent with being a policy owner; there was no assignment of the policy to her that bound defendant; and there was no writing between Mr. McConnell and plaintiff evidencing an assignment as required by the divorce decree. Defendant pointed out several terms of the policy, in addition to the "**Change of Beneficiary**" provision (quoted *ante,* at p. 3).

7

The policy provision on "**Change of Owner**" stated: "The owner may name a new owner by notifying us in writing while the insured is alive. When we receive acceptable signed notice, the change will take effect on the date the notice was signed." The policy provision on "**Assignments**" stated: "The owner may assign this policy. We are not bound by an assignment unless duplicate signed forms are filed with us. We are not responsible for the validity of an assignment. The rights of the owner and the beneficiary are subject to the rights of the assignee."

Further, defendant contended that without a viable breach of contract claim, there could be no claim for breach of the covenant of good faith and fair dealing, and there was no evidence of malice, fraud or oppression to support a punitive damages claim.

In her opposition, plaintiff contended defendant was vicariously liable for the conduct of its agent, Hebson, and was charged with notice of whatever information Hebson learned from plaintiff. Plaintiff contended she was the 100 percent beneficiary of the policy because the 2006 change form was never effectuated; she became the full owner of the policy in 2008, ending any rights Mr. McConnell had to control the beneficiary; defendant acted in bad faith by unreasonably denying plaintiff the full policy benefits; and factual questions precluded summary judgment of her punitive damages claim.

In April 2019, the trial court granted defendant's motion for summary adjudication of the claims for breach of contract, breach of the covenant of good faith and fair dealing, and punitive damages. The court concluded the "undisputed facts establish that McConnell remained the owner of his life insurance policy at all relevant times," observing that the policy's "explicit requirements for changing ownership were never met."

The court found "the undisputed facts show that McConnell's submission of the signed form was sufficient to effectuate a change in the beneficiary pursuant to the terms of the policy, even though he never submitted the full divorce judgment upon Farmers's request pursuant to its internal procedure." After that request, "neither McConnell nor [plaintiff] made any further requests for such a change," and "[t]hese undisputed facts conclusively establish that Farmers distributed the policy proceeds pursuant to the terms of the policy." The claims for breach of the covenant of good faith and fair dealing and punitive damages likewise failed.

The court denied summary adjudication of plaintiff's cause of action for promissory estoppel. In August 2019, the court held a bench trial on that issue, and concluded plaintiff failed to establish her claim. Plaintiff does not challenge that finding.

In February 2020, the trial court entered judgment in defendant's favor, and plaintiff filed a timely notice of appeal.

**DISCUSSION**

**1. The Standard of Review**

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.,* subd. (c).)

Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th

9

536, 542.)  It is no longer called a "disfavored" remedy.  (*Ibid.*)
"Summary judgment is now seen as 'a particularly suitable
means to test the sufficiency' of the plaintiff's or defendant's
case."  (*Ibid.*)  On appeal, "we take the facts from the record that
was before the trial court . . . .  ' "We review the trial court's
decision de novo, considering all the evidence set forth in the
moving and opposing papers except that to which objections were
made and sustained." ' "  (*Yanowitz v. L'Oreal USA, Inc.* (2005)
36 Cal.4th 1028, 1037.)

## 2.    Applicable Legal Principles

### a.    Defendant's "law of the case" contention

We begin with a preliminary, but significant, principle.  As
we have explained, in an earlier opinion we affirmed the trial
court's grant of summary judgment in favor of plaintiff's
insurance broker, Hebson, on plaintiff's claim for professional
negligence.  Her claim was based on Hebson's alleged failure to
advise her, after her divorce, that it was necessary to change the
ownership of the policy to ensure that she would remain the sole
beneficiary.  We found that the broker had no duty to advise
plaintiff how to protect her beneficial interest in the policy,
absent special circumstances, of which there were none.  (*Randle
v. Farmers New World Life Ins. Co., supra,* B276579 ["A client
cannot, merely by telling her broker about changed
circumstances after her divorce, impose on the broker a duty to
give what amounts to legal advice about how best to protect her
interests, unless the broker has held himself out as a life
insurance expert."].)

In the case now before us, plaintiff contends Farmers "is
vicariously liable for, and charged with the knowledge of, its
appointed agent."  It is undisputed that Hebson was defendant's
agent, and had been since 1972.  Farmers contends it "cannot be

10

held vicariously liable for Hebson's acts because this Court already found that Hebson did not act negligently or breach any duty it owed to [plaintiff]," and under the law of the case rule, we may not reexamine that issue.

Defendant's premise is mistaken. Law of the case has no application here. Our opinion held Hebson was not liable for professional negligence as plaintiff's insurance broker. We did *not* hold that Hebson was not negligent. We did not address any issue about defendant's liability for the negligence of Hebson, its agent. There was no issue before us about whether defendant had constructive knowledge of what Hebson knew. We held only that Hebson as an insurance broker did not owe plaintiff any duty to protect her interest in the policy as she alleged. Finding Hebson had no personal liability for professional negligence based on the absence of any duty to the plaintiff is entirely different from determining whether Hebson's actions or knowledge as defendant's agent were binding on or imputed to defendant.

In *O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, the insurance agent's knowledge was imputed to the insurer; " '[a]s a general rule, an agent has a duty to disclose material matters to his or her principal, and the actual knowledge of the agent is imputed to the principal.' " (*Id.* at p. 288; Civ. Code, § 2332 ["As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."]; see also *Loehr v. Great Republic Ins. Co.* (1990) 226 Cal.App.3d 727, 734 [finding a licensed independent insurance agent was an agent of the insurer, and "[a]s such, his acts and omissions as agent were binding on [the insurer]" and distinguishing *Eddy v. Sharp*

11

(1988) 199 Cal.App.3d 858; "[t]he court in *Eddy* was concerned with whether the defendant insurance agent or broker in question owed any duties to the consumer plaintiff. The case did not address the issue of whether the defendant's acts or omissions were binding on the carrier, or even whether the defendant in fact was an agent of the carriers he dealt with, as opposed to being an independent insurance broker."].) The same is true here.

### b. The issue of policy ownership

The trial court granted summary judgment based on the terms of the policy, without regard to any other evidence or to case precedents on policy ownership. As mentioned, the court held plaintiff's argument that Mr. McConnell forfeited his ownership to her failed as a matter of law, because the policy's requirements for changing ownership were not met. This was error.

The legal principle to be applied is this: "[O]nce the true ownership of the policy is brought home to the insurance company, whether that ownership is established by taking out the policy in the name of the owner, or by assignment, *or by contract* or gift, the company is bound to recognize the rights of the lawful owner." (*Morrison v. Mutual Life Ins. of New York* (1940) 15 Cal.2d 579, 587 (*Morrison*), italics added.) "The question is whether *at the time the company paid the proceeds* to the insured, it had such knowledge or notice of plaintiff's ownership of the policy as to require a recognition of plaintiff's rights." (*Ibid.*, italics added.)

Further, *Morrison* found it was "untenable" to exclude evidence of conversations with the insurer's agent on the ground the proffered evidence "was inconsistent with the provisions of the policy, and an attempt to show rights in a manner not

permitted by the provisions of the [insurance] agreement."
(*Morrison, supra,* 15 Cal.2d at p. 588.) The court explained:
"*Despite the provisions of the policy specifying the manner in which ownership of the policy may be established,* and the general provision that no agent has authority to make representations or waive any provisions of the policy, properly authorized agents of the company, or agents with apparent authority, may charge the company with notice." (*Ibid.*, italics added.)

Thus, *Morrison* establishes two pertinent legal points: (1) The insurance policy's requirements for changing ownership do *not* control over the provisions of a contract (here, the divorce decree) of which the insurer has notice, and (2) the question is whether, when it paid out the proceeds, Farmers "had such knowledge or notice of plaintiff's ownership of the policy as to require a recognition of plaintiff's rights." (*Morrison, supra,* 15 Cal.2d at pp. 587, 588.) Here, as to the issue of notice, there are material factual disputes, as summarized below.

Of course, the facts here and in *Morrison* are different, but the principles are the same. *Morrison* involved a husband who, unbeknownst to his wife, had surrendered the insurance policy of which she was the beneficiary for its cash surrender value. (*Morrison, supra,* 15 Cal.2d at p. 581.) The plaintiff wife contended she became the owner of the policy by virtue of a contract with her husband. (*Id.* at p. 586.) The undisputed evidence showed that, as between the plaintiff and her husband, she was the actual owner, and she would prevail if they were contending between themselves for the proceeds of the policy. (*Id.* at pp. 586–587.) This evidence was not enough to show that the insurance company had knowledge or notice of plaintiff's ownership of the policy. But other evidence, improperly excluded by the trial court, tended to establish the wife's right to recover,

13

so the judgment for the insurance company was reversed. (*Id.* at pp. 587–589.) The improperly excluded evidence included conversations with the insurance company's agent in which the agent assured plaintiff that her husband could not get the insurance money without her signature. (*Id.* at p. 588.)

Other case precedents are less to the point, but confirm that, despite insurance policy requirements, contrary provisions in a subsequent contract between the policy owner and a beneficiary may control in some circumstances. In *Life Insurance Co. of North America v. Cassidy* (1984) 35 Cal.3d 599, an ex-wife was not entitled to the proceeds of a life insurance policy, notwithstanding a beneficiary designation on file with the company. Her designation as beneficiary "was superseded as of the date the parties entered into a marital settlement agreement which comprehensively disposed of all the rights and obligations between them." (*Id.* at p. 602.) And in *Mutual Life Ins. Co. v. Franck* (1935) 9 Cal.App.2d 528, a husband purported to change the beneficiary of life insurance policies from his ex-wife to his second wife, after an agreement and a decree of divorce that directed him to "constitute his [first] wife sole, irrevocable beneficiary of [two life insurance] policies and pay all premiums thereon." (*Id.* at p. 531.) The court affirmed judgment for the first wife. The court cited another case for the principle that "a subsequent agreement of the insured in consideration of a settlement of property rights in contemplation of a divorce by the terms of which he covenants to make her sole, irrevocable beneficiary of the policy, vests her with an equitable interest therein which may not be defeated without her consent." (*Id.* at p. 534.)

Defendant says this case is distinguishable from *Morrison* because "undisputed facts show that [plaintiff] was never the

14

owner of the [p]olicy" and never had the legal authority to change the beneficiary designation; and there is no admissible evidence supporting plaintiff's ownership claim. Defendant is mistaken on both points.

For one thing, the only "undisputed facts" defendant cites are the policy terms, and *Morrison* makes clear that policy terms are not conclusive. And, contrary to defendant's contention, there *is* admissible evidence creating material factual disputes. We agree with defendant that the court properly sustained its hearsay objections to portions of plaintiff's declaration concerning her conversations with Mr. McConnell about his forfeiture of his interest in the policy and his assurances he had not changed the beneficiaries. But there is other evidence from which a factfinder could reasonably infer that plaintiff was the owner of the policy and that defendant was on notice of that fact before it paid out the proceeds.

The divorce decree stated that "[i]f [Mr. McConnell] decides to discontinue paying the premium on his three-quarter (3/4th) interest, then he *shall forfeit* his ownership as to his three-quarter (3/4th) interest. . . ." (Italics added.) There was evidence plaintiff was paying the premiums, Farmers knew she was doing so, and, before it paid out the proceeds of the policy, Farmers knew the terms of the divorce decree and knew "[t]here was a discrepancy between a third-party document [the divorce decree] and the four corners of a policy contract." This evidence creates a material dispute as to whether defendant was on notice of a legitimate claim by plaintiff and nevertheless paid out the proceeds without regard to her claim.

Defendant also points out there was no evidence Mr. McConnell notified plaintiff in writing that he was assigning his ownership interest to her, as stated in the divorce decree.

15

(The decree, after stating that if Mr. McConnell discontinues premium payments, he "shall forfeit his ownership," further provides that "[h]e shall notify [plaintiff] in writing and assign the policy to [plaintiff] if she chooses to pay the premiums.") Defendant is correct, but the point is irrelevant. That provision of the decree is clearly for plaintiff's protection, and her failure to insist on a writing has no bearing on Mr. McConnell's forfeiture of his ownership as a result of failing to pay the premiums.

Defendant also points to the policy provision that it is not bound by an assignment "unless duplicate signed forms are filed with us." This is likewise irrelevant; the pertinent point, as established in *Morrison*, is whether, at the time defendant paid out the proceeds, "it had such knowledge or notice of plaintiff's ownership of the policy as to require a recognition of plaintiff's rights." (*Morrison, supra,* 15 Cal.2d at p. 587.) As to that point, as we have discussed, there are material factual disputes.

In sum, the trial court granted summary judgment without acknowledging the principle that an insurance policy's requirements for changing ownership do not control over the provisions of a contract of which the insurer has notice, and without regard to material factual disputes on that point.

c. **The change of beneficiary issue**

The trial court also concluded that Mr. McConnell had changed the beneficiaries in 2006 in accordance with the terms of the policy, which provides that a change in beneficiary is effective on the date it is signed, and that neither Mr. McConnell nor plaintiff made any further requests for a change. These undisputed facts, the court said, "conclusively establish that Farmers distributed the policy proceeds pursuant to the terms of the policy."

16

That conclusion, too, entirely omits consideration of the evidence that Farmers, and its agent Hebson, repeatedly assured plaintiff that she was the sole beneficiary of the policy, up to and even after Mr. McConnell's death. We reach the same conclusion as the *Morrison* court, where the issue was, as here, whether the insurer had notice of the plaintiff's rights. The court found that if responsible agents of the insurer "stated on behalf of the company that the insured could not surrender the policy without the consent of plaintiff beneficiary, and plaintiff thereafter relied upon such statement, the company is certainly estopped to deny those representations as to plaintiff's rights under the policy. Had it not been for these assurances, plaintiff might at that time have taken the necessary steps to regain possession of the policy, or to establish her rights thereunder." (*Morrison, supra,* 15 Cal.2d at pp. 588–589.)

On a final note, the parties argue at length about Mr. McConnell's intent in 2006, when he sent his beneficiary change request but then failed to send the complete divorce decree required under defendant's procedures. We see no evidentiary basis to infer any particular intent on Mr. McConnell's part. He may have been forgetful or confused or vindictive or he may have decided not to proceed—we will never know, and any inference drawn from his conduct is speculative.

There are material disputed facts bearing on whether Farmers negligently paid the proceeds of the policy to recipients not entitled to those proceeds, thus breaching the contract of insurance. Summary adjudication was therefore improper. Because of its erroneous ruling on the breach of contract claim, the trial court did not independently assess plaintiff's claims for breach of the covenant of good faith and fair dealing and punitive

17

damages, so we need not address the propriety of summary adjudication of those claims.

## DISPOSITION

The judgment is reversed.  The cause is remanded to the trial court with instructions to vacate its order granting summary adjudication for defendant on plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, and punitive damages, and to enter a new order denying summary adjudication.  Plaintiff shall recover her costs on appeal.


GRIMES, J.


WE CONCUR:



STRATTON, P. J.



HARUTUNIAN, J.*

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18